**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**L. C. JONES and Richard Jones, Jr.,
Defendants-Appellants.**

**No. 76–3249.**

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1977.

Rehearing and Rehearing En Banc
Denied Nov. 2, 1977.

Allan D. Shackelford, Clarksdale, Miss., (Court-appointed), for defendants-appellants.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Sam Knowlton, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before GOLDBERG and FAY, Circuit Judges, and DUMBAULD,* United States District Judge.

DUMBAULD, Senior District Judge.

Appellants were convicted (upon circumstantial evidence, including that of fingerprint and ballistics experts) of transporting in interstate commerce and disposing of a stolen motor vehicle in violation of 18 U.S.C. §§ 2312 and 2313. They contend that the evidence was insufficient to convict, and that prejudicial evidence of other

misconduct was improperly admitted. We find neither contention convincing under the circumstances of the case.

The general rule is that evidence of other offenses is inadmissible because it might distract the jury's attention from the particular case in hand and lead to a conviction merely because of the defendant's bad character and general criminal propensity. It would be a miscarriage of justice if a defendant were found guilty of one offense simply because the jury felt he should be punished because of participation in other offenses for which he is not on trial.

But it is equally well settled that evidence of other misconduct may properly be proved if it tends to establish identity, intent, *modus operandi,* plan, scheme, or design. *U. S. v. Jackson,* 451 F.2d 259, 262–63 (C.A. 5, 1971). In the instant case the challenged circumstances were relevant to the issue of identity and presence of defendants in the area of the crime charged, and tended to rebut the tendered defense of alibi.

The stolen Ford 1974 Mustang was stolen in East St. Louis, Illinois at 6:30 p. m. on December 20, 1975, and found in Bolivar County, Mississippi on the levee north of Gunnison, the next morning at 10:30 a. m. (Tr. 33, 38–40, 145–48).[1] The owners testified that they did not know the defendants and had not permitted them to use the car. The defendants were originally from Bolivar County and at the time of the crime were living in East St. Louis (Tr. 165–66, 216–17, 225, 345–46).

Fingerprints of the defendants were found in the stolen car. Fingerprints of appellant L. C. Jones were found on the gear shift of the car (Tr. 64, 90, 102), those of appellant Richard Jones on the inside front window (Tr. 65, 103), and those of a third defendant Lawrence Lawson[2] on a paper sack (containing a dead rabbit) found on the back floor board (Tr. 61, 73, 101).

---

* Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. References to the transcript of proceedings at the trial will be referred to by the abbreviation "Tr."

2. Lawson was acquitted by the jury. Tr. 465.

On the early morning of December 21, 1975, a 1973 white Torino was found abandoned with the motor running in Pertshire, Mississippi (Tr. 135–36, 140).[3] That car contained a shotgun shell. The stolen Mustang was also found with the motor running and it contained three shotgun shell hulls, as well as a C.B. radio stolen from the Torino (Tr. 145–52). The shells had all been fired from the same gun (Tr. 140–41, 192). Both cars had had the key mechanism torn out in the same manner (Tr. 163–64).

At about 5:30 a. m. on December 21, the fire siren at Gunnison went off, and shots were fired at the house of Joe Romando, the mayor of Gunnison (Tr. 181–83, 223).

A witness in Gunnison that morning saw the light colored car and the Mustang running in convoy at a high speed. The former was left by the side of the road with the motor running, while the Mustang came back in the other direction. (Tr. 199, 214). Another witness heard the fire alarm go off; Romando's service station was on fire; later a man in a white Torino asked if the fire had been put out; and shortly after shots were fired at Romando's house (Tr. 208–13).

Both appellants once worked at Joe Romando's service station (Tr. 216).

Romando testified that at about 5:15 a. m. a white car drove up to his house and someone asked "Did you get the fire out?" and three shots were fired at him. (Tr. 230–31). Romando as mayor had made out a warrant on December 7th or 9th against appellant L. C. Jones for stealing an automobile (Tr. 235).

The evidence assailed by appellants is that relating to the fire at Mayor Romando's service station and the shots fired at his house. It is contended that this was prejudicial beyond its probative value. Concededly it must be regarded as prejudicial to show the exuberant firing of shots at someone's house, even in a duck-hunting community where many people seem to have been out at an early hour with firearms in order to go hunting.

However, the challenged evidence does have probative value on the issue of identity. The trial judge's cautionary instruction clearly specified that the evidence regarding activities in the early morning hours of December 21, 1975, "has been admitted for one, specific, limited purpose, only; namely, for whatever light it might shed on the identity of the defendants or any of them . . . as the person or persons who committed the criminal acts charged in the indictment. You should not use that other evidence introduced by the Government, for any other purpose whatsoever."[4]

The assailed evidence tended to prove that the appellants knew Joe Romando and had reason for hostility towards him in connection with a previous criminal charge against L. C. Jones in which Romando as mayor had issued a warrant against Jones. It showed also that the occupants of the Torino were persons familiar with persons and places in the Gunnison area.[5]

█ If the jury believed that this hostility led to the firing of shots at Romando's house, they could conclude that the defendants were riding in the white Torino that morning. This car had been stolen at Gunnison early that morning. The presence of defendants in the area where the stolen Mustang was abandoned[6] would thus be established. Appellants' defense of alibi (their only defense) would thus be weakened.[7]

3. The Torino had been stolen in the early morning of December 21, 1975, at Gunnison. Tr. 176–78.

4. Tr. 441. For emphasis the judge reiterated this instruction.

5. In that connection the jury might properly consider the circumstance that the defendants were long-time residents of the locality, but who at the time the Mustang was stolen were living in East St. Louis, Illinois, where the car was stolen.

6. Abandonment would constitute "disposition" of the car, violative of 18 U.S.C. § 2313.

7. The alibi testimony was given by a first cousin of appellants (Tr. 344) and the "fiancee" of appellant L. C. Jones (Tr. 358).

If the defendants were the occupants of the Torino, the jury could then infer that they were also the occupants of the stolen Mustang involved in the indictment. For the C.B. radio from the Torino was found in the Mustang. Shells found in both cars were fired by the same gun.

Moreover, fingerprints of the appellants were found in the Mustang. The print of L. C. Jones on the gear shift lever would indicate that he had driven the car. The print of Richard Jones on the front window would indicate that he had ridden in the front seat of the car. The testimony of the owners of the motor vehicle regarding the time and place of its being stolen, and that they did not know the defendants nor give them permission to use it, would suffice to warrant the conclusion that appellants' prints were made between 6:30 p. m. on December 20, 1975 (when the car was stolen in Illinois) and 10:30 a. m. on December 21, 1975, (when the car was found in Mississippi).

Such evidence of possession of a recently stolen vehicle, in the absence of a satisfactory explanation, would justify the jury in finding interstate transportation of the Mustang, knowing it to have been stolen. *U. S. v. Lowery,* 436 F.2d 1171, 1175 (C.A. 5, 1971).

In short, the evidence admitted was proper for a legitimate purpose, and constituted a part of the chain of circumstantial evidence establishing appellants' guilt of the offense for which they were on trial. Its admission was therefore not erroneous, and the convictions are affirmed.