[No. A018123. First Dist., Div. Four. Sept. 23, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ALI PERTSONI, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Parts IB, II, III and IV are not certified for publication (Cal. Rules of Court, rule 976.1).

## COUNSEL

James Larson, Nina Wilder, Tim Brosnan and Larson & Weinberg for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SABRAW, J.**—A jury found Ali Pertsoni guilty of first degree murder (Pen. Code, § 187) with use of a firearm (Pen. Code, § 12022.5). He was sentenced to 27 years to life in state prison. On appeal he asserts evidentiary error, instructional error and prosecutorial misconduct. We affirm.

Shortly after midnight on July 27, 1981, Fahri Repishti was sitting at a table at the Greek American Club on Eddy Street. Nick Lambros, who was working at the club, unlocked the front door and admitted appellant. Lambros then returned to his work behind the counter, his back to the tables. During the ensuing 15 seconds Lambros heard a "little commotion"—some angry words exchanged in a foreign language. One of the speakers was Repishti. Lambros then heard a shot. He turned and saw Repishti and appellant standing "right up on top of one another." Repishti slumped to the floor, face down. Appellant stood over him at a distance of about two feet, "scrutinizing the body." About 10 to 15 seconds later, appellant shot Repishti in the head. Five seconds after that he fired a third shot.

Appellant ordered the other people in the club not to move. He "scanned" the area with his gun and then walked out.

At approximately 9:30 that morning appellant surrendered to the police. He gave police a tape-recorded statement in which he admitted the shooting,

but claimed that he was afraid of Repishti and had fired in self-defense. He stated that he was 40 feet away from Repishti when he shot him.

The medical examiner determined that the first shot was fired into the victim's abdomen from a distance of four to six inches. A stippling pattern on his left wrist and a wound to his right index finger indicated that he had tried to protect his abdomen with his hands. The wound to his abdomen and the first wound to his head were each fatal. No weapon was found on or near him.

Over defense objection, the prosecution was permitted to introduce evidence of a prior act of violence by appellant. FBI Special Agent Ronald Davenport testified that on May 17, 1977, he interviewed appellant in Chicago concerning an incident that occurred at the Yugoslav consulate on May 3, 1976. Appellant, an Albanian, was participating with other Albanians in a demonstration against the consulate when two men emerged from the building. Thinking one was the Yugoslav Ambassador, appellant fired four shots at him. The victim, who in fact had no relationship with Yugoslavia, suffered only an injury to his finger. Appellant stated that he had wanted to kill the man because he believed that he was associated with the Yugoslav government. Appellant became visibly upset when he spoke about his experiences in Yugoslavia. He was vehement in his hatred of the government and its representatives.

Appellant testified in his own defense. He stated that Repishti worked for the Yugoslav secret police (UDBA) and that he had tried to recruit appellant. Repishti threatened appellant's family in Yugoslavia and also threatened appellant. Appellant moved to Houston to avoid Repishti, but he showed up there as well. Frightened, appellant left Houston and returned to San Francisco.

On appellant's return, Repishti started calling him again. Appellant complained to the FBI, but they were unable to help him. Repishti told appellant that he was working for the American police as well as the UDBA.

Two months before the shooting, appellant began to carry a revolver. He had often seen Repishti with a gun. When he first entered the Greek American Club, he followed Lambros over to the coffee counter and asked him for a cup of coffee. Repishti called to him. Using abusive language, Repishti threatened him and said that his time had come. Repishti put his hand inside his coat as if to reach for a weapon. Appellant saw a gun in his hand. Fearing for his life, appellant shot him. He remembered nothing after the first shot. He explained that he did not tell police the whole truth because he was frightened.

Other defense witnesses testified that Repishti had a reputation for violence in the Albanian community. He had admitted working for the UDBA, and he also was a paid informant for the bureau of alcohol, tobacco and firearms. He and appellant had argued before and Repishti had threatened to kill appellant. Repishti had been convicted in New York for carrying a loaded firearm. Several prior specific incidents of violence by him were described.

## DISCUSSION

### I. *Evidence of Uncharged Offense*

■ Outside the presence of the jury, a hearing was held on the admissibility of FBI Agent Davenport's testimony concerning the prior "Chicago incident." Defense counsel objected to the evidence on the basis of Evidence Code sections 1101 and 352, and on the additional ground that the prosecution had not established the corpus delicti of the prior offense independently of appellant's admission to Davenport. The court ruled the evidence admissible. Appellant contends that this ruling was prejudicial error.

#### A. *Evidence Code Sections 1101 and 352*

■ Pursuant to Evidence Code section 1101, evidence of other crimes is inadmissible to prove the accused had the propensity or disposition to commit the crime charged (*id.,* subd. (a); *People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366]), but admission of such evidence is not precluded if the evidence tends logically to prove some other fact material to the case (Evid. Code, § 1101, subd. (b); *People* v. *Guerrero, supra*). When evidence of other crimes is offered for this latter purpose, its admissibility depends on "(1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883]; italics in original. See also *People* v. *Guerrero, supra,* 16 Cal.3d 719, 724, quoting *People* v. *Schader* (1969) 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841].) To satisfy the requirement of materiality, the fact sought to be proved may be either an ultimate fact in the proceeding, such as the defendant's specific intent, or an intermediate fact, such as his motive, from which such ultimate fact may be presumed or inferred. (*People* v. *Thompson, supra,* 27 Cal.3d 303, 315 and fns. 13, 14.)

■ Here the ultimate fact to be proved was appellant's state of mind when he shot Repishti. The prosecution theory was that the killing was

premeditated and with malice aforethought, whereas appellant asserted that he acted in self-defense. Because evidence of appellant's motive would tend to establish his state of mind, the materiality requirement was satisfied. (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315, fn. 14; see *People* v. *Terry* (1970) 2 Cal.3d 362, 396 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Durham* (1969) 70 Cal.2d 171, 188 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Powell* (1974) 40 Cal.App.3d 107, 154-155 [115 Cal.Rptr. 109].)

We next determine whether the uncharged offense serves " ' ' "logically, naturally, and by reasonable inference" ' " to establish appellant's motive. (*People* v. *Thompson, supra,* 27 Cal.3d at p. 316.) Appellant argues that the relevancy requirement is satisfied only by a showing of "substantial similarity" between the offenses, and that the Chicago incident and this offense are too dissimilar to permit the inference that his motive in both instances was the same.

Although "similarity is often necessary to bridge the gap between other crimes evidence and the material fact sought to be proved" (*People* v. *Thompson, supra,* at p. 319, fn. 23), the degree of similarity required necessarily depends on the inference sought to be drawn between the uncharged offense and the present offense (*id.,* at p. 316; *People* v. *Schader, supra,* 71 Cal.2d at p. 775). Thus, when the inference to be drawn relates to the identity of the perpetrator, it is said that the distinctive common marks of the crimes must be like a "signature." (*People* v. *Alcala* (1984) 36 Cal.3d 604, 632 [205 Cal.Rptr. 775, 685 P.2d 1126]; see *People* v. *Bigelow* (1984) 37 Cal.3d 731, 749 [209 Cal.Rptr. 328, 691 P.2d 994]; *People* v. *Thornton* (1974) 11 Cal.3d 738, 756 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) When, in contrast, the mere *fact* of the prior offense gives rise to an inference of motive, similarity of the offenses is irrelevant. (*People* v. *Thompson, supra,* 27 Cal.3d at p. 319, fn. 23, discussing *People* v. *Durham, supra,* 70 Cal.2d at pp. 188-189; see also *People* v. *Sykes* (1955) 44 Cal.2d 166, 170 [280 P.2d 769]; *People* v. *Powell, supra,* 40 Cal.App.3d at p. 155; *People* v. *Lopez* (1969) 1 Cal.App.3d 78, 85 [81 Cal.Rptr. 386].)

Here the evidence of the Chicago incident was proffered to show the lengths to which appellant's passionate hatred of anyone connected with the Yugoslav government would take him. For this purpose the distinctive similarity of the victims' assumed affiliation with the Yugoslav government was sufficient to satisfy the relevancy requirement. Proof of involvement in prior crimes is admissible if it tends logically " 'to establish any fact material for the People or to overcome any material matter sought to be proved by the defense' " (*People* v. *Durham, supra,* 70 Cal.2d at p. 186) and, in partic-

ular, "to rebut a defense that a criminal act was done out of 'honest fear' [citation]" (*People* v. *Terry, supra,* 2 Cal.3d at p. 396; see *People* v. *Wells* (1949) 33 Cal.2d 330, 342 [202 P.2d 53], disapproved on other grounds in *People* v. *Wetmore* (1978) 22 Cal.3d 318 [149 Cal.Rptr. 265, 583 P.2d 1308]). The evidence was admissible because it tended logically and by reasonable inference to show that appellant's motive in shooting Repishti was to kill an agent of the detested government, rather than to protect himself against a perceived danger.

The remaining question is whether the trial court abused its discretion in failing to exclude the evidence pursuant to Evidence Code section 352. ■ Since other-crimes evidence is inherently prejudicial, uncharged offenses are admissible only if they have "*substantial* probative value." (*People* v. *Thompson, supra,* 27 Cal.3d at p. 318, italics in original.) "'[H]ow much "probative value" proferred evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity).' [Citation.]" (*Id.,* at fn. 20.) ■ "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence [citations]." (*People* v. *Lopez, supra,* 1 Cal.App.3d at p. 85.)

■ The Chicago incident, as indicated, tended logically to show that appellant's motive in killing Repishti was to eliminate an agent of the Yugoslav government. Appellant's state of mind was the only issue in the case. Evidence of his motive thus was critically important in showing a reason for his criminal behavior and in rebutting his claim of self-defense. (See *People* v. *Terry, supra,* 2 Cal.3d at p. 396; *People* v. *Sykes, supra,* 44 Cal.2d at p. 170; *People* v. *Wells, supra,* 33 Cal.2d at p. 342; *People* v. *Lopez, supra,* 1 Cal.App.3d at p. 85; cf. *People* v. *Dominguez* (1981) 121 Cal.App.3d 481, 498 [175 Cal.Rptr. 445] [gang membership].) The extremes to which appellant would go in expressing his political feelings could be shown in no other way. (Cf. *People* v. *Alcala, supra,* 36 Cal.3d at p. 636 [implication that necessity justifies use of other-crimes evidence to show motive].) The evidence, therefore, satisfied the requirements of relevancy, materiality, and necessity.

*People* v. *Gibson* (1976) 56 Cal.App.3d 119 [128 Cal.Rptr. 302], relied on by appellant, is distinguishable. In *Gibson* the defendant, charged with felony murder, asserted an alibi defense. Evidence of his prior theft and battery offenses against two different victims was admitted to show that his motive in this killing was robbery. The court held that where the defendant's

very commission of the criminal act was disputed, the probative value of the other-crimes evidence admitted to show motive was outweighed by its prejudicial effect. (*Id.*, at pp. 129-130.) The jury could not be expected to limit its use of the evidence to determine the defendant's motive for the killing, *after applying other evidence* to reject his alibi defense and determine that he was in fact the perpetrator. (*Id.*, at p. 130.) In the instant case, in contrast, appellant's commission of the criminal act is not a disputed issue. The evidence of motive related directly to the only issue the jury had to decide—his state of mind.

We conclude, therefore, that the probative value of the evidence exceeded its prejudicial effect, and that admission of the evidence was proper, provided that it was not excludable for any other reason.

B. *Proof of Corpus Delicti**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

There being no prejudicial error, the judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 16, 1986.

---

*See footnote, *ante,* page 369.