2005 SD 8

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**John Thomas LASSITER, Defendant and Appellant.**

**No. 22854.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 2004.

Decided Jan. 12, 2005.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Robert T. O'Keefe of Tinan, Smith & Bucher, Mitchell, South Dakota, Attorneys for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we confront the problem of when prior act evidence may be used to show modus operandi or motive in order to prove identity. A man entered the home of Scott Davis and assaulted him. At the time, Davis had a relationship with Brenda Tobin. Defendant, John Lassiter, Tobin's former boyfriend, was charged with the assault. At trial, defendant denied involvement in the incident and offered an alibi. To prove that defendant was the assailant, the State sought to offer evidence surrounding defendant's prior conviction for aggravated assault of another former girlfriend. Defendant moved to suppress this evidence, but the trial court ruled that the circumstances of the prior offense were admissible because they tended to prove the assailant's identity. Defendant was convicted of aggravated assault and first degree burglary. He appeals, and we reverse because the circumstances of the prior assault were inadmissible to prove identity.

### Background

[¶ 2.] On October 2, 2002, Scott Davis was staying at the apartment of his girlfriend, Brenda Tobin, in Ethan, South Dakota. After driving Tobin to work in Mitchell, Davis returned to his rural home near Mt. Vernon, South Dakota. He arrived at 6:30 a.m. Twenty minutes later, he began to leave his home to head for work at a nearby farm.

[¶ 3.] As he was leaving his house, Davis noted something peculiar. He turned to investigate and saw a man standing near the door. Davis asked the man why he was on his property. The man struck him on the head with a rock. Then the assailant pushed him back into the

house, saying, "I can't let you leave here today." Davis responded, "What do you mean, I can't leave here today? Are you going to kill me?" The assailant smiled. Davis interpreted the response to mean that the assailant intended to kill him.

[¶ 4.] Rock in hand, the assailant told Davis that Tobin would eventually cheat on Davis. Not willing to risk fleeing, Davis remained in his home with the assailant for the next hour. Eventually, Davis told the assailant that if he did not arrive at work soon, his employer would come looking for him. This revelation appeared to alarm the assailant who responded that he would leave. Davis and the assailant exited the home. As Davis was driving away, he noticed a light blue vehicle parked along the road near his residence. He wrote down the vehicle's license plate number. He then drove to work where he contacted the sheriff's department and sought medical attention.

[¶ 5.] Defendant was Tobin's former boyfriend. The two had lived together for a short time. After they separated, problems arose between them over a vehicle that Tobin had purchased and defendant had made payments on. In the midst of this dispute, in October 2002, Tobin had the vehicle towed from the parking lot where defendant worked. Because he no longer had a car, defendant borrowed a light blue vehicle from one of his friends.

[¶ 6.] In making his report to a deputy sheriff, Davis named defendant as his assailant. He also described the car and gave the officer the license plate number. Later, the deputy saw defendant driving the car. Upon stopping it, the deputy placed defendant under arrest.

[¶ 7.] Defendant told the deputy that he was returning from Tyndall, South Dakota. He said that he had taken the day off from work to buy a new car. He denied that he had been present at Davis's home, and he gave the deputy a timeline of his activities during the day leading up to his arrest.

[¶ 8.] Defendant was charged with the offenses of aggravated assault, kidnapping, and first degree burglary. In a December 2002 trial, defendant was acquitted of kidnapping, but the jury was unable to reach a decision on the remaining counts.

[¶ 9.] In the second trial, the State called as its last witness Lori Beckmann, defendant's former girlfriend. The sole purpose for her testimony was to introduce the facts of defendant's prior aggravated assault conviction. Defendant had earlier moved to suppress this testimony. However, the trial court overruled the motion, concluding that

the offered evidence shows conduct that is substantially similar to that charged, and is highly probative on the issue of intent, and particularly the specific intent to commit the alleged crimes that the State must show, the issue of motive, as both the prior act and the current charge involve similar actions involving a relationship with a girlfriend, and identity.

[¶ 10.] Before Beckmann's testimony, the trial court read the following jury instruction:

Ladies and gentlemen, the State is going to call Lori Beckmann and the subject of her testimony is going to concern prior—what we call prior acts evidence. She is expected to be providing testimony concerning certain incidences that happened between her and the Defendant at another time and another county. And the attorneys let the court know when this type of evidence is proposed to be introduced so that I can determine whether I would allow it or not. And the purpose of allowing this evidence is for your consideration as to

whether it tends to show that the Defendant, Mr. Lassiter, intended to commit the offense for which he is now charged. This evidence is allowed to show motive, intent, or identity of the person charged, but you must not consider this evidence as tending to show in any other respect Mr. Lassiter's guilt with respect to the offense with which he is charged.

* * *

[¶ 11.] Beckmann testified that she lived with defendant "on and off for about three or four years." Eventually, she attempted to end the relationship. On August 28, 2000, shortly after her attempt, defendant held her in her vehicle against her will, assaulted her, and threatened to kill her, stating, "he could kill [her] at any time." Defendant eventually let her go home after she promised to meet him the following day. She headed to work the next morning armed with a small caliber pistol. As she drove into town, she noticed that defendant was following her. She testified that on numerous occasions she had seen defendant with a pistol. Fearing that he would harm her if she stopped, she raced to the police station. Once there, she locked herself in a bathroom until police officers convinced her to come out. When she did, she told the officers of what had happened that day and the previous day. Defendant was later convicted of aggravated assault on Beckmann.

[¶ 12.] At the conclusion of the trial here, the jury convicted defendant of aggravated assault and first degree burglary. For the aggravated assault, he was sentenced to twenty-five years in the penitentiary, and for first degree burglary, seven-

ty years, with thirty years suspended. On appeal, defendant asserts the following issues: (1) "Was the evidence insufficient to support the jury verdict and therefore did the trial court err in denying defendant's motion for judgment of acquittal?" (2) "Did the trial court err in denying defendant's motion to exclude prior bad acts evidence against defendant and allowing the introduction of said evidence by the State?" (3) "Did the trial court err in sentencing the defendant in a manner disproportionate to defendant under the totality of the circumstances in this case?"[1]

### Analysis and Decision

[¶ 13.] On evidentiary questions, our review is limited to whether the trial court abused its discretion. *State v. Red Star*, 2001 SD 54, ¶ 10, 625 N.W.2d 573, 576 (citations omitted). Evidence of other acts offered for the sole purpose of establishing a propensity to commit a crime is irrelevant, and therefore, inadmissible. *State v. Wright*, 1999 SD 50, ¶ 14, 593 N.W.2d 792, 799. To obtain a new trial, a defendant must prove not only that the trial court abused its discretion in admitting the evidence, but also that the admission resulted in prejudice. *Red Star*, 2001 SD 54, ¶ 10, 625 N.W.2d at 577 (citing SDCL 15-6-61). Erroneous admission of evidence requires reversal except where we conclude that the error was harmless. *State v. Owens*, 2002 SD 42, ¶ 85, 643 N.W.2d 735, 756 (citation omitted).

[¶ 14.] The State argued to the trial court and now to this Court that the facts surrounding defendant's prior conviction of aggravated assault were relevant to prove defendant's identity and motive.[2]

---

1. Because we reverse on the second issue, we need not address the other issues.

2. The trial court concluded that the evidence was also relevant to show intent. At no time was the *mens rea* of the assailant brought into

question. Clearly, the assailant intended to commit the act. Lassiter's alibi defense only placed in controversy the identity of the assailant. Thus, the more liberal allowance of prior acts evidence to prove *mens rea* is inap-

Because defendant denied that he assaulted Davis, the State contends that the facts supporting defendant's previous aggravated assault conviction were admissible.

[¶ 15.] In accord with SDCL 19–12–5 (Rule 404(b)), the admissibility of other acts evidence depends on a two-step analysis: (1) whether the evidence is relevant to an issue other than character, and (2) whether "the probative value of the evidence is substantially outweighed by its prejudicial effect...." *State v. Ondricek,* 535 N.W.2d 872, 873 (S.D.1995); *see* SDCL 19–12–3 (Rule 403). We focus here on the first prong of this test. Under SDCL 19–12–5 (Rule 404(b)), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." If, however, the evidence is offered for any purpose other than to prove a person's character or propensity to commit an act, it is admissible. *Wright,* 1999 SD 50, ¶ 13, 593 N.W.2d at 798 (citations omitted). In determining whether to admit the evidence of other acts, a trial court must decide whether the proffered evidence is relevant to some material fact. *State v. Dace,* 333 N.W.2d 812, 816 (S.D.1983). It is the proponent of the prior act evidence who must persuade the trial court that the evidence has some permissible purpose. *Wright,* 1999 SD 50, ¶ 14, 593 N.W.2d at 798 (citing SDCL 19–12–1 (Rule 401)). Upon a trial court's determination that the proffered evidence is relevant, "the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 'substantially' outweigh probative value." *Id.* at 799 (citations omitted).

[¶ 16.] Under the State's first theory of admissibility, it reasons that evidence of defendant's prior aggravated assault is ad-missible because it tends to identify defendant as the perpetrator. Evidence of prior acts similar in nature to the charged offense may be admitted where a defendant's identity is in issue. SDCL 19–12–5 (Rule 404(b)). Generally, evidence of prior acts is permitted when they demonstrate a particular "modus operandi." *See* 1 Edward J. Imwinkelried, Uncharged Misconduct Evidence § 3:10, at 49 (Rev. ed. 1999 & Supp. 2004) (citation omitted). Although in *Wright* we clarified SDCL 19–12–5 (Rule 404(b)), we have never strayed from the requirement that in cases where prior acts are offered to prove identity, the acts must be unusual or distinctive. 1999 SD 50, ¶ 18, 593 N.W.2d at 800 (citations omitted); *see also, e.g., State v. Johnson,* 316 N.W.2d 652, 655 (S.D.1982) (three burglaries within relatively short time span; same method used to commit offenses; same type of property taken in each burglary). These acts need not be identical, but they must be of such close similarity that an inference can be drawn that the same person committed the acts. McCormick On Evidence § 190, at 449 (Edward W. Cleary ed., 2nd ed. 1972). Indeed, "much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts." *Id.*

[¶ 17.] In support of its theory, the State contends that because both the charged and uncharged offenses were the same type of crime, aggravated assault, evidence of defendant's prior conviction should be permitted. The State suggests that our decision in *Chamley* stands for this proposition. *State v. Chamley,* 1997 SD 107, 568 N.W.2d 607. It does not. In *Chamley,* this Court held that the trial court abused its discretion in concluding

---

plicable here. *Cf. Red Star,* 2001 SD 54, ¶ 11, 625 N.W.2d at 577. Relevancy is demonstrated where evidence is necessary to prove an element of the crime, not simply to demonstrate defendant's character. *Id.*

that the probative value of a prior act outweighed the potential for prejudice. 1997 SD 107, ¶ 12, 568 N.W.2d at 612. In so holding, this Court did not lay down a rule allowing evidence of a prior conviction based on the mere fact that a defendant was once again charged under the same statute. Instead, the *Chamley* Court reasoned that the probative value of a prior act was slight where the uncharged and charged crimes did not fall under the same statute. Therefore, the Court ruled that the trial court abused its discretion in finding that the slight probative value of the evidence outweighed the prejudice it created. *Id.* ¶ 16.

■■■ [¶ 18.] The State also attempts to support its theory by pointing to other similarities between the attacks on Beckmann and Davis, including the fact that testimony was given in both cases that defendant had previously followed both of them, had threatened to kill both, and had subsequently let both go. Where a court allows a prior act to be admitted to prove identity, it generally will look for common features that make it highly probable that the unknown offender and the accused are the same person. *See Wright*, 1999 SD 50, ¶ 18, 593 N.W.2d at 800 ("unusual or distinctive"); McCoRMICK, *supra* § 190, at 449 ("so nearly identical in method as to earmark them as the handiwork of the accused"). *See also Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind.2003); *Russell v. State*, 113 S.W.3d 530, 541 (Tex.Ct.App., 2003) (" '[T]o be admissible to show identity, an extraneous offense must be so similar to the charged offense as to *mark* the offenses as the defendant's handiwork.' " (citation omitted)); *State v. Shippee*, 839 A.2d 566, 572 (Vt.2003) (Skoglund, J., concurring); *State v. DeVincentis*, 150 Wash.2d 11, 74 P.3d 119, 125 (2003) ("[W]hen identity is at issue, the degree of similarity must be at the highest level and

the commonalities must be unique[.]"). Alone, the facts presented by the State are certainly not unique, and while the pattern of both crimes demonstrates some similarities, we cannot say that a fact finder could properly use those similarities to conclude that both crimes were committed by one individual.

■■ [¶ 19.] Proof by "modus operandi" is only one method by which prior misconduct can prove identity. Identity can be proved indirectly by proof of motive. "In the motive cases, unlike the modus cases, the courts do not insist that the motive be truly unique to the defendant." 1 IMWINKELRIED, *supra* § 3:15, at 79. Under the State's second theory of admissibility, it argues that evidence of defendant's prior conviction is admissible because it tends to identify defendant by showing that the same circumstances motivated both crimes. Specifically, the State argues that "the central connection between the two attacks is the identical motive resulting in the identical criminal charge[.]"

[¶ 20.] Generally, there are three basic elements in a criminal prosecution: (1) proof of the commission of an act; (2) by a person with the necessary *mens rea;* and (3) accomplished by the defendant. *Id.* § 4:01, at 2. Evidence demonstrating motive may be relevant when used to prove that the act was committed, to prove that the actor had the requisite *mens rea,* or to identify the defendant as the perpetrator of the act. Under the "motive" theory, the State argues that evidence surrounding defendant's prior aggravated assault conviction tends to identify him as the person who committed the crimes here.

[¶ 21.] Evidence of a prior crime may demonstrate a defendant's motive to commit a crime in one of two ways. *Id.* § 3:15, at 79. First, the prior act can supply the motive for the charged act. *Id.*

For instance, in *People v. Daniels*, 52 Cal.3d 815, 277 Cal.Rptr. 122, 802 P.2d 906, 925 (1991), the prosecutor was allowed to prove a defendant's motive (and thus identify him) by showing a direct relationship between the earlier robbery where the defendant was rendered a paraplegic by a police officer and the murder of police officers in retribution. *See also United States v. Jones*, 559 F.2d 960, 962 (5th Cir.1977) (revenge motive for attacks on official's home and business who issued arrest warrant used to identify defendants). Here, however, there was no relationship between the two offenses or the two victims. The girlfriend in the first incident had no connection to the girlfriend (or her new boyfriend) in the second incident. The State does not even argue that any causal connection existed between the Davis and Beckmann assaults. Thus, the first category for admitting a prior act to prove motive does not apply here.

[¶ 22.] "In the second category, the uncharged act evidences the existence of a motive, but the act does not supply the motive." 1 IMWINKELRIED, *supra* § 3:18, at 103. This approach is typically followed where "the motive is in the nature of hostility, antipathy, hatred, or jealousy." *Id.* But as Imwinkelried warns, "[t]here must be some relationship between all the victims. Otherwise, the evidence would show only the defendant's general violent nature . . . ." *Id.* Here, again, there was no nexus between the two victims. Those jurisdictions allowing this theory generally limit its application to circumstances where there is some type of relationship between the victims. *See, e.g., United States v. LeBaron*, 156 F.3d 621, 625–26 (5th Cir.1998) (evidence of prior murders

admitted where other victims were former members of the same church); *Kimble v. State*, 659 N.E.2d 182, 184–85 (Ind.Ct.App. 1995) (evidence of defendant's membership in racially biased group was relevant to show that defendant was motivated to choose victim based on her race); *Lazcano v. State*, 836 S.W.2d 654, 660 (Tex.Ct.App. 1992) ("[A]s to motive, such evidence usually is required to relate . . . to other acts by the accused against the victim of the crime for which the accused is presently being prosecuted. . . . It has, however, been previously held that extraneous offenses are admissible to illustrate an accused's ill will toward all persons within a certain class of people."). *See also United States v. Bowman*, 720 F.2d 1103, 1105 (9thCir.1983) (prior assault on relative of wife—sufficient factual relationship or nexus between two victims to render the prior conviction relevant to the issue of defendants motive for assault on wife).[3]

[¶ 23.] The State contends that the prior offense and the present offense, while not related, have the same or similar motives: being "jilted" was defendant's motive behind the attacks on Beckmann and Davis. Reasoning that defendant was "angry at his first girlfriend and his second girlfriend," the State suggests that defendant's anger at Tobin, his second girlfriend, was transferred to Davis, Tobin's new boyfriend. With respect to the second girlfriend (Tobin), there was evidence based on the assailant's remarks to Davis that the assailant resented being rejected by Tobin. That established a motive for the assault on Davis. Certainly, defendant's breakup with Tobin supplied evidence of a possible motive for defendant to

---

3. *See also State v. Green*, 232 Kan. 116, 652 P.2d 697, 701 (1982) (marital homicide-evidence of discordant marital relationship, of defendant's ill treatment of spouse, and prior threats to kill admissible on defendant's motive for purpose of proving identity of defendant as killer).

assault her new boyfriend. That evidence was clearly admissible. But the prior assault on defendant's former girlfriend was inadmissible because any connection between the two assaults was simply too remote. Allowing evidence about the prior assault on Beckmann only tended to prove that because defendant had done it before, he must have done it again.

[¶ 24.] This is the kind of propensity evidence SDCL 19–12–5 (Rule 404(b)) was designed to preclude: evidence of other crimes cannot be used to prove conduct through an inference about the defendant's character, i.e., a general propensity to commit assaults when rejected by girlfriends. Indeed, this is what legal commentators warn against: "But where the *motive* evidence is offered to prove that the act was committed or that the defendant was the perpetrator, the only justification for admitting the evidence under Rule 404(b) is that it is not evidence of character; in this situation courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury." 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5240, at 480 (1978) (emphasis added). *See also State v. Saltarelli,* 98 Wash.2d 358, 655 P.2d 697, 699–700 (1982) (rape of another woman five years earlier had no logical tendency to provide a motive for the charged rape except upon the forbidden inference of a propensity to commit rape).

[¶ 25.] Although the State offers no case law approving this type of prior act evidence, one of the dissenters cites as authority the case of *Johnson v. State,* 936 P.2d 458 (Wyo.1997). There, citing Imwinkelried, the Wyoming Supreme Court ruled that evidence of prior assaults on an ex-girlfriend were admissible in the defendant's trial for aggravated assault of his current girlfriend to prove, among other things, identity and motive. *Id.* at 463–64. Like here, there was no relationship between the two victims. On that point, however, the resemblance to our case ends. The facts in *Johnson* are so different as to be of no use here. The *Johnson* court's final comments suffice to illustrate a conspicuous distinction. The court found "substantial similarities between the two assaults" and concluded, "Although the two assaults were not identical, their commonalities created a powerful inference that Appellant had committed both assaults." *Id.* at 465. No such "commonalities" existed here.

[¶ 26.] Finally, the State argues, in the alternative, that if "the prior bad acts evidence has no probative value" any error that may have occurred by its admission was harmless. This argument fails to recognize that evidence lacking probative value may still be prejudicial. In addition to allowing Beckmann to tell the jury of her assault, the court also allowed her to testify about inflammatory matters that had no bearing on the present offense. She testified that defendant carried a gun. She told the jury that because of her fear of defendant, she was compelled to arm herself with a like weapon. Yet there was no gun involved in this case. Considering these inflammatory matters, we conclude that the error in admitting this evidence was prejudicial. The court's instruction to the jury on prior acts only validated for the jurors the propriety of considering these irrelevant and prejudicial facts. *See State v. Moschell,* 2004 SD 35, ¶ 54, 677 N.W.2d 551, 567 (recognizing where jury instructions "mislead, conflict, or confuse then reversible error results").

[¶ 27.] In summary, the evidence of defendant's prior assault conviction was not so similar to the charged act that it would identify defendant as the probable assail-

ant. Nor was this prior conviction and the motive that drove him to that act relevant in identifying the actual assailant here. Thus, the only remaining use the jury could put this evidence to was to infer defendant's propensity to commit violent offenses.[4] We conclude that the trial court abused its discretion in admitting evidence of defendant's prior conviction under SDCL 19–12–5 (Rule 404(b)).

[¶ 28.] Reversed.

[¶ 29.] SABERS, and MEIERHENRY, Justices, concur.

[¶ 30.] GILBERTSON, Chief Justice and ZINTER, Justice, dissent.

GILBERTSON, Chief Justice (dissenting).

[¶ 31.] I respectfully dissent. I would affirm the trial court as I conclude it did not abuse its discretion in the admission of the testimony of Beckmann.

[¶ 32.] I agree with the Court that the correct standard of review is that of abuse of discretion. *State v. Red Star*, 2001 SD 54, ¶ 10, 625 N.W.2d 573, 576. Under this standard we will not reverse a trial court's evidentiary ruling if "we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." *Dakota Cheese, Inc. v. Taylor*, 525 N.W.2d 713, 715 (S.D.1995) (citing *Rosen's, Inc. v. Juhnke*, 513 N.W.2d 575, 576 (S.D.1994) (additional citations omitted)). "Abuse of discretion is the *most* deferential standard of review avail-

able with the exception of no review at all." *In re SD Microsoft Antitrust Litigation*, 2003 SD 19, ¶ 27, 657 N.W.2d 668, 678 (emphasis added) (citations omitted). Under such a deferential standard "we must be careful not to substitute our reasoning for that of the trial court." *State v. Larson*, 512 N.W.2d 732, 736 (S.D.1994) (quoting *State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986)). I submit that based on our existing case law in this jurisdiction, "[w]hile the majority properly states the [correct standard of review] it fails to articulate how 'a judicial mind, in view of the law and circumstances, could not have reasonably reached the same conclusion' as this trial court." *State v. Chamley*, 1997 SD 107, ¶ 51, 568 N.W.2d 607, 620 (Gilbertson, J., dissenting) (citing *State v. Barber*, 1996 SD 96, ¶ 14, 552 N.W.2d 817, 820).

[¶ 33.] First, I disagree with the Court's analysis as to identity and the admissibility of the prior assault. The Court would rely on case law from other jurisdictions to now require "similarity must be at the *highest level* and the commonalities must be unique[.]" *State v. DeVincentis*, 150 Wash.2d 11, 74 P.3d 119, 125 (2003) (emphasis added). The Court would further limit admissibility to situations where the victim of the uncharged act and the charged act was the same person or the victims, although not the same person, were members of the same class. *See United States v. LeBaron*, 156 F.3d 621 (5th Cir.1998).[5] This analysis

---

4. "The danger of prejudice is also greater when the mode of proving the motive is by other similarly motivated acts because the danger that the jury will infer propensity is somewhat greater than when the motive is to be proved by other acts that caused it." 22 WRIGHT & GRAHAM, *supra* 5240, at 484.

5. *LeBaron* does not stand for the proposition that victims must be members of the same

class in order to admit prior bad acts to prove motive. The issue in *LeBaron* was whether to admit a prior murder to show a common scheme or comprehensive plan. Motive to eliminate all former members of the church was the unifying factor between the prior murder and the murders charged. *LeBaron*, 156 F.3d at 625.

creates a heightened standard that is inconsistent with our established case law.

[¶ 34.] In *State v. Pedde*, 334 N.W.2d 41 (S.D.1983),[6] the Court was called upon to define the nature of similarity required for prior acts to be admissible under the relevance prong when identity was at issue. Although acknowledging a signature crime requirement was an option, the Court rejected this approach and ultimately opted to follow the analysis employed by the Eighth Circuit Court of Appeals: "[T]o be admissible, evidence of prior acts need not be that of an identical offense but only 'of similar involvement reasonably related to the offending conduct.'" *Id.* at 43 (quoting *United States v. Gocke*, 507 F.2d 820, 825 (8th Cir.1974), *cert denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975)).

[¶ 35.] Second, the trial court allowed the prior acts into evidence for the limited purposes of establishing identity, *motive and intent*.[7] We have repeatedly held that the State is entitled to establish each element of the crime in its own manner within recognized rules of evidence. *State v. Herrmann*, 2004 SD 53, ¶ 12, 679 N.W.2d 503, 507. When a defendant enters a complete denial to a charged offense which contains an intent element, the state may use proof of similar acts in order to carry its burden on the intent element. *State v. Klein*, 444 N.W.2d 16, 19 (S.D.1989) (citing *State v. Champagne*, 422 N.W.2d 840, 843 (S.D.1988)). *See also Pedde*, 334 N.W.2d at 43. Moreover, our general proposition is that if the evidence is offered for any purpose other than to prove a person's character or propensity to commit an act, it is admissible unless more prejudicial than probative. *State v. Wright*, 1999 SD 50, ¶ 13, 593 N.W.2d 792, 798.

[¶ 36.] Lassiter took the stand and testified under oath he was not even at the crime scene that day. There was no stipulation between the State and Lassiter as to the State being relieved of its burden of proof on the element of intent in the charges of Aggravated Assault, SDCL 22–18–1(5) and Burglary in the First Degree, SDCL 22–32–1(1). Lassiter entered a general denial which required the State to prove each element of the offense. Once Lassiter's general denial firmly placed the issues of identity, intent and motive into contention, he allowed the state to offer relevant prior bad acts under 19–12–5 (Rule 404(b)) to carry its burden.

[¶ 37.] Despite the overwhelming South Dakota case law that supports admission of prior bad acts whenever intent is at issue, the Court's analysis side-steps that case law. In *Klein*, the defendant was convicted of burning to defraud an insurer and attempted theft by deception for setting his house on fire to avoid foreclosure. The Court affirmed the trial court's admission of prior convictions of theft by deception for a felony bad check scheme similarly motivated by the fact that the defendant was at that time behind on his house payments. We concluded the prior bad check scheme was relevant as to motive and "of similar involvement *reasonably related* to the offending conduct." 444 N.W.2d at 19 (emphasis added) (citing *Gocke*, 507 F.2d at 825).

[¶ 38.] In *State v. Lodermeier*, 481 N.W.2d 614 (S.D.1992), the defendant claimed the prior bad act where defendant previously was found in possession of sto-

---

6. *Pedde*, 334 N.W.2d 41 (S.D.1983), is particularly instructive as three members of that Court were also on the Court at the time of the adoption of SDCL 19–12–3 and 19–12–5 in 1978.

7. The use of 404(b) evidence to prove identity is distinct from the use of prior acts to show intent. *United States v. Carroll*, 207 F.3d 465, 468 (8th Cir.2000).

len machinery and had removed a stick-on dealer label was not sufficiently similar to be admitted to show his intent to possess stolen machinery or that he possessed items with serial numbers knowingly removed. *Id.* at 626. This Court rejected the claim and affirmed the trial court. The Court noted that the standard previously followed in *Pedde* and *Klein* was consistent with the standard followed by the Eighth Circuit:

> A prior act admitted to show guilty knowledge need not be identical to the crime charged. It need only be "reasonably related to the offending conduct." *Klein,* 444 N.W.2d at 19 (quoting *State v. Pedde,* 334 N.W.2d 41, 43 (S.D.1983)); *United States v. Gocke,* 507 F.2d 820, 825 (8th Cir.1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975). In other words, it need only be "sufficiently similar to support an inference of criminal intent." *United States v. Burkett,* 821 F.2d 1306, 1309 (8th Cir. 1987).

*Lodermeier,* 481 N.W.2d at 625–26. *See also State v. Loftus,* 1997 SD 94, ¶ 25, 566 N.W.2d 825, 830.

[¶ 39.] In *Veeder v. Kennedy,* 1999 SD 23, 589 N.W.2d 610, the issue involved the tort of alienation of affections. The defendant objected to the admission of evidence that he had an affair with a fellow employee some twenty years earlier. *Id.* ¶ 41, 589 N.W.2d at 619–20. We upheld admission of the evidence while noting that intent was an element of the cause of action. *Id.* ¶ 44. We stated:

> As the defendant rarely admits the crucial element of intentional wrongful conduct, it must be established by the plaintiff through circumstantial evidence to avoid being nonsuited.

*Id.* ¶ 43.

[¶ 40.] This insight is particularly applicable here as when the victim was hit in the head with the rock, he claimed he inquired of the defendant, "are you going to kill me?" Rather than verbally indicate his intent, the purported victim testified that Lassiter merely smiled—a gesture which could mean a multitude of possibilities.

[¶ 41.] More recently in *Novak v. McEldowney,* 2002 SD 162, 655 N.W.2d 909, the plaintiff, the wife of defendant's hired man, sued the defendant for intentional infliction of emotional distress, battery and sexual harassment. The trial court refused to admit evidence of suggestive acts committed in the presence of another woman who was the wife of another hired man. *Id.* ¶ 6, 655 N.W.2d at 912. We reversed the trial court holding it was an abuse of discretion to fail to admit the other acts evidence of intent as "[i]t is claimed that McEldowney made sexually suggestive comments and committed unwanted touching to both" the wives of defendant's employees. *Id.* ¶ 15. In reaching this conclusion, we considered the similarity of both the victims and crimes but did not speak in terms of "unique" commonalities or "highest" levels of similarity. *Id.*

[¶ 42.] In the instant case, the issue of motive was similarly dismissed by the Court.[8] In Instruction No. 22, the trial court properly instructed the jury that the prior bad acts could "be used only to show: motive, intent, or identity of the person charged." Because the jury was properly instructed on the issue of motive, this

---

8. "[M]otive is the 'reason a person chooses to commit a crime,' but it is not equivalent to the 'mental state such as intent' required to commit the crime." *People v. Cash,* 28 Cal.4th 703, 122 Cal.Rptr.2d 545, 50 P.3d 332, 353 (2002) (quoting *People v. Hillhouse,* 27 Cal.4th 469, 117 Cal.Rptr.2d 45, 40 P.3d 754, 777 (2002)).

Court must evaluate the usage of the prior bad acts evidence for this permissible and reasonable purpose considered by the trial court or risk substituting "our reasoning for that of the trial court." *See Larson*, 512 N.W.2d at 736 (quoting *Rufener*, 392 N.W.2d at 426).

[¶ 43.] A most similar case on point is *State v. Lloyd*, 354 N.C. 76, 552 S.E.2d 596 (2001). In *Lloyd*, evidence of the defendant's prior shooting of his ex-girlfriend's boyfriend was admitted to show the defendant's motive in shooting his current girlfriend who had left him for another man. *Id.* at 608–09. That court held the strong evidence of jealousy in both crimes was relevant to the current charge, and held the prior bad act was properly admitted under 404(b) as evidence of motive. *Id.* at 609.

[¶ 44.] The existing South Dakota standard as announced in *Pedde, Klein*, and *Lodermeier*, and most recently applied in *Veeder, Loftus* and *McEldowney* is a substantially different standard than the one the Court now adopts. Applying this heightened standard, the majority concludes that "while the pattern of other crimes demonstrates some similarities, we cannot say that the fact finder could properly use those similarities to conclude that both crimes were committed by one individual." Moreover, the new heightened standard is at odds with our general proposition that if the evidence is offered for any purpose other than to prove a person's character or propensity to commit an act, it is admissible. *See Wright*, 1999 SD 50, ¶ 13, 593 N.W.2d at 798.

[¶ 45.] Both SDCL 19–12–3 and 19–12–5 were adopted as rules of the Court in 1978. Neither has been amended since that time. The Court today cites to no previous cases of this Court that support the new doctrine which it now adopts. Moreover, the cases it cites from other jurisdictions were all decided well after the enactment of SDCL 19–12–3 and 19–12–5.[9] The Court offers no supporting arguments that at the time these rules were enacted, it was the intent of this Court in 1978 to have these rules stand for what in 2005 the Court now concludes they currently mean. If the Court wants to amend SDCL 19–12–3 and 19–12–5, it should follow its own procedures and hold public hearings on a proposed amendment to the existing rules rather than engage in a *de facto* amendment as it does today. Under our canons for interpretation of rules, statutes and

9. The Court today, armed largely with legal treatises together with a few unpersuasive cases from other non-binding jurisdictions instead of case law from South Dakota, overturns over twenty years of this State's case law that permits the admission of prior bad acts to show intent when "of similar involvement reasonably related to the offending conduct." *See Pedde*, 334 N.W.2d at 43. Do we dismiss *Pedde, Klein*, 444 N.W.2d 16, *Lodermeier*, 481 N.W.2d 614, *Veeder*, 1999 SD 23, 589 N.W.2d 610, and others in favor of a more stringent standard advocated by Imwinkelried, Wright & Miller, and McMormick?

   SDCL 1–1–23 provides:
   The will of the sovereign power is expressed:
   (1) By the Constitution of the United States;
   (2) By treaties made under the authority of the United States;
   (3) By statutes enacted by the Congress of the United States;
   (4) By the Constitution of this state;
   (5) By statutes enacted by the Legislature;
   (6) By statutes enacted by vote of the voters;
   (7) By the ordinances of authorized subordinate bodies;
   (8) Rules of practice and procedure prescribed by courts or adopted by departments, commissions, boards, officers of the state, or its subdivisions pursuant to authority so to do.
      Noticeably absent from this statute is any authority that after-the fact privately authored legal treatises are a basis to overturn our existing South Dakota court rules and interpretative case law.

constitutional provisions, significant limitations are placed upon our judicial authority. As Justice Hugo Black previously observed:

> I realize that many good and able men have eloquently spoken and written, sometimes in rhapsodical strains, about the duty of this Court to keep the Constitution in tune with the times. The idea is that the Constitution must be changed from time to time and that this Court is charged with a duty to make those changes. For myself, I must with all deference reject that philosophy. The Constitution makers knew the need for change and provided for it. Amendments suggested by the people's elected representatives can be submitted to the people or their selected agents for ratification. That method of change was good for our Fathers, and being somewhat old fashioned I must add it is good enough for me.

*Griswold v. Connecticut*, 381 U.S. 479, 522, 85 S.Ct. 1678, 14 L.Ed.2d 510, 537 (1965) (Black, J., dissenting).

[¶ 46.] Based on the case law of South Dakota, which is the interpretative guidance to SDCL 19–12–3 and SDCL 19–12–5, the trial court possessed a judicial mind in view of the law and circumstances when it reached its conclusion. For the above reasons I would affirm the trial court[10] and therefore respectfully dissent.

ZINTER, Justice (dissenting).

[¶ 47.] I join the Court's opinion concerning the prior assault's inadmissibility to prove modus operandi under the identity exception in SDCL 19–12–5 (Rule 404(b)). However, in my view, the prior assault was admissible under the motive exception; *i.e.*, to prove that a "jilted" Lassiter had a motive to assault his former girlfriend's new boyfriend.

[¶ 48.] As the Court notes, prior acts are admitted under the motive exception to prove identity in two types of cases. In the first type, the prior act supplies the motive for the charged act. *See supra* ¶ 21 (citing Edward J. Imwinkelried, Uncharged Misconduct Evidence § 3.15 (Rev. ed. 1999 & Supp. 2004)). This is not that type of case.

[¶ 49.] This is the second type of case in which "the uncharged act evidences the existence of a motive, but does not supply the motive." *See supra* ¶ 22 (citing Imwinkelried, § 3.18). The uncharged act is relevant when identity is at issue because the uncharged crime evidences the same motive that impelled the charged crime. *See*, Imwinkelried, § 3.18 at 103. Imwinkelried explains:

> the motive is the cause, and both the charged and uncharged acts are effects. Both crimes are explainable as a result of the same motive. The prosecutor uses the uncharged act to show the existence of the motive, and in turn the motive strengthens the inference of the defendant's identity as the perpetrator of the charged crime.

*Id.*

[¶ 50.] Prior uncharged acts are typically admitted in this type of case when "the motive is in the nature of hostility, antipathy, hatred or jealousy," and there is some relationship between the victims. *Supra* ¶ 22 (citing Imwinkelried, *supra* § 3.18). The Court observes that there was no relationship between Beckmann and Davis, and therefore, it concludes that the prior uncharged acts evidence was only used to prove Lassiter's general violent

---

**10.** The remaining two issues are without merit.

nature. *See supra* ¶¶ 22–23. However, the Court's reliance on a "relationship between the victims" fails to analyze whether Beckmann and Davis were members of a class of victims. *See supra* ¶ 22. Imwinkelried collects numerous cases holding that uncharged acts are also admitted when the hostility, antipathy, hatred or jealousy is "against a class which included the victim." *Supra* § 3.18 at 103.[11]

[¶ 51.] Here the victims were unrelated, but they were members of a well-recognized class. This class is composed of individuals that are subject to domestic violence because of their direct or indirect association with the non-consensual break-up of domestic relationships. It includes women who are former spouses or girl-friends (in this case Lori Beckmann and Brenda Tobin), and the new boyfriend (Davis). There is an obvious relationship and connection among the victims in this class. Indeed, daily news reporting and the examination of any court docket confirm the existence of this class of endangered people. The hostility, antipathy, ha-tred and jealousy that often exist against this class is a fact of life that we cannot ignore.

[¶ 52.] Consequently, even though the victims are unrelated, courts permit the admission of an uncharged act as proof of motive in the charged crime if the victims are members of the class of individuals involved in broken domestic relationships involving the defendant. For example, in *Johnson v. State*, 936 P.2d 458, 465 (Wyo. 1997), the assault of a former girlfriend was admitted to prove motive for a subsequent assault of a second, *unrelated* girlfriend.[12] As the Wyoming Supreme Court explained:

> Motive was also at issue in this case given that "the prosecution is permitted to prove the accused's motive to identify the accused as the perpetrator of the charged crime." According to Professor Imwinkelried: "Motive is not an ulti-mate fact or element of the crime; rather it is an intermediate, evidentiary fact. The courts have variously described the concept of motive as the 'reason that

11. Imwinkelried cites decisions that have per-mitted admission of prior acts involving mem-bers of classes such as, nonunion workers, persons connected with the Yugoslav govern-ment, Jewish persons and organizations, members of the same racial group, other women, and daughters. *Id. See Peats v. State*, 213 Ind. 560, 12 N.E.2d 270, 276 (1938); *People v. Pertsoni*, 172 Cal.App.3d 369, 218 Cal.Rptr. 350 (1985); *United States v. Khorra-mi*, 895 F.2d 1186 (7th Cir.1990); *United States v. McInnis*, 976 F.2d 1226 (9th Cir. 1992); *Schurman v. Leonardo*, 768 F.Supp. 993 (S.D.N.Y.1991); *State v. Jackson*, 82 Ohio App. 318, 81 N.E.2d 546 (Ct.App. 1948); *Masters v. People*, 58 P.3d 979 (Colo.2002).

12. Although this Court attempts to distinguish *Johnson*, noting that it discussed the "sub-stantial similarities" of those two offenses, that discussion does not make the case distin-guishable. First, the "similarity of offenses" discussion in *Johnson* was only one of three alternative grounds for admitting the other acts evidence (it was part of the court's opin-ion on proof of identity by modus operandi). However, the court also discussed motive to prove identity, and the motive discussion was a separate, independent basis for admission of the other acts. Consequently, *Johnson* was not a case that was limited to proof of identity by the commission of substantially similar offenses. The Wyoming Supreme Court's al-ternative discussion of motive was clearly part of the holding of the case.

Second, this Court's use of the "substantial similarities" discussion to distinguish *Johnson* is legally misplaced. Imwinkelried explicitly notes that when the motive exception is in-volved, the "uncharged act need not be simi-lar to the charged crime to evidence the com-mon motive." Imwinkelried, § 3.18 at 103.

nudges the will and prods the mind to indulge the criminal intent,' an 'inducement or state of feeling that impels and tempts the mind to indulge in a criminal act,' and 'the moving force which impels to action for a definite result.' While intent accompanies the actus reus, the motive comes into play before the actus reus. The motive is a cause, and the actus reus is the effect." He continued: "[T]hat the defendant had a motive for that particular crime increases the inference of the defendant's identity. Many other persons presumably had no motive, and the defendant's motive raises the probability of defendant's identity.... It is ideal if the defendant is the only person with such a motive. At the other extreme, if the motivation is almost universal such as a general sexual desire, proof of the motive has little or no probative value on the issue of identity. In the motive cases ... the courts do not insist that the motive be truly unique to the defendant. The courts assume that motive has strong probative value because a motive naturally leads to action. If the motive is not universal but shared by many other persons, the courts tend to admit the proof of motive."

936 P.2d at 464 (quoting *Mitchell v. State,* 865 P.2d 591, 596–597 (Wyo.1993) (quoting Edward J. Imwinkelried, Uncharged Misconduct Evidence § 3.15 (1992 & Supp. 1993))) (internal citations omitted).

[¶ 53.] Moreover, the admission of prior domestic assaults has been extended from prior girlfriends to third parties such as Davis. "[T]he web of spousal [13] discord often entangles third parties, and accordingly, [we] have extended the scope of the motive exception to allow evidence showing wrongful acts against the spouse when the ultimate crime was committed against a third party." *Mitchell v. United States,* 629 A.2d 10, 13–14 (D.C.1993). The motive exception has even been used to admit a prior assault upon a defendant's first girlfriend's new boyfriend, when the charged crime of murder was committed against the defendant's second girlfriend. It was admitted to prove identity through the common motive, jealousy, that was displayed after each woman broke off the domestic relationship. The North Carolina Supreme Court described this three-person relationship (or class) as a "romantic triangle." *State v. Lloyd,* 354 N.C. 76, 552 S.E.2d 596, 603 (2001).

[¶ 54.] I would follow these authorities and recognize that in recently broken domestic relationships, the jilted boyfriend, his ex-girlfriends, and their new boyfriends are members of a class. Membership in that class makes the perpetrator's common hostility, antipathy, hatred and jealousy towards members of this class relevant to prove identity. It simply ignores reality not to acknowledge the common motive and relationship that exists among the individuals involved in what the *Lloyd* court described as "romantic triangle[s]." Even this Court acknowledges the foundation for this class when it concedes that Lassiter's "breakup with Tobin supplied evidence of a possible motive for defendant to assault her new boyfriend." *Supra* ¶ 23.

[¶ 55.] We should therefore recognize this class of domestic violence victims. A judicial mind could have reasonably reached the conclusion that Lassiter was unable to deal with being "jilted," he harbored ill will and hostility towards those directly and indirectly involved, and therefore, he had a motive to threaten and assault members of this class. What else

---

13. "Spousal" relationships are not limited to marriage. "For these purposes, a significant relationship can be the functional equivalent of a marriage." *Mitchell v. United States,* 629 A.2d 10, 13, n. 6 (D.C.1993) (citations omitted).

explains Lassiter's motive to assault a stranger such as Davis? Only one thing: Lassiter's common motive following the breakup of domestic relationships.[14] Because motive is the *only explanation* for this defendant to act against this particular victim, the uncharged act increases the inference of the defendant's identity. Given that hostile and jealous motives are, unfortunately, all too real within this class, I would recognize the relevancy of motive to prove identity. Therefore, I would affirm [15] the trial court.

14. Contrary to the Court's opinion, the prior assault of Beckmann and the motive that drove Lassiter to that act assisted the jury in identifying the actual assailant here. Nothing else explained why Lassiter would assault a stranger. Therefore, character was not the "only justification" for admission of the prior assault, and furthermore, it was not offered to "smuggle forbidden [propensity] evidence." *Supra* ¶ 24. It is true that "[i]f the only reason for offering the evidence is to show a defendant's propensity, then it is clearly irrelevant." *State v. Wright*, 1999 SD 50, ¶ 14, 593 N.W.2d 792, 799. However, propensity was not the only reason for admission of the prior act and "[o]nce the evidence is found relevant ... the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 'substantially' outweigh probative value." *Id.*

15. Lassiter's other issues are without merit.