STATE of South Dakota, Plaintiff and Appellee,

v.

William Ray SIELER, Defendant and Appellant.

No. 15182.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 1986.

Decided Nov. 26, 1986.

James D. Taylor of Tinan, Padrnos, Smith & Taylor, Mitchell, for defendant and appellant.

Grant E. Gormley, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

GILBERTSON, Circuit Judge.

## ACTION

A Davison County jury convicted William Ray Sieler (defendant) of sexual contact with a minor under the age of fifteen years. SDCL 22–22–7. He raises two issues on appeal. We affirm both.

## FACTS

Defendant and Nancy Schrank (mother) are the natural parents of D.S. (daughter). Daughter was placed in mother's custody when her parents were divorced in 1979. Mother remarried and mother and daughter set up housekeeping with stepfather in Mt. Vernon, South Dakota.

In June 1983, daughter went to Michigan to live with defendant. Daughter lived with him until December 1983, when she moved back to Mitchell, South Dakota, at mother's insistence. Defendant followed.

Upon returning to South Dakota, daughter and defendant lived with daughter's older sister and her boyfriend. The four lived in a two bedroom mobile home in Mitchell from January 16, 1984, until March 5, 1984. On that day, mother discovered daughter and defendant's sleeping arrangements and moved daughter to mother's home in Mt. Vernon.

In July 1984, daughter returned to Michigan and lived with defendant until August 1984 when she moved to Mt. Vernon to live with mother. Daughter asked mother for professional help. She did not tell mother the specific nature of her problem. In the fall of 1984, daughter informed a social worker that she had been sexually molested by defendant. The social worker informed the Davison County sheriff's office. The sheriff's department interviewed defendant and investigated the matter; ulti-

mately defendant was charged and convicted.

Both daughter and defendant testified that they slept in the same bed while living in the mobile home in Mitchell. They also testified that a blanket was rolled up and placed between them on the twin bed. Daughter wore a nightgown and panties to bed, while defendant wore only his undershorts.

Daughter testified that defendant fondled her breasts and vagina while she tried to sleep. She also testified that defendant kissed her breasts. Daughter further testified that while defendant was committing these acts he breathed heavily and told her that she had become a beautiful young lady. Daughter testified that defendant committed the same acts upon her every night or at least every other night during her first visit to Michigan and quite often during her second visit. When asked why she did not report this repeated abuse earlier, daughter stated that she loved her father, trusted him, and did not want to see him get into trouble.

### ISSUE ONE

The first issue is whether the trial court abused its discretion by prohibiting defendant from cross-examining daughter about alleged statements she had previously made charging other individuals with sexually molesting her.

Immediately prior to trial, the state moved to restrict defense counsel's use of a "child in need of assistance" hearing held in Iowa. Defendant charged that daughter alleged in the Iowa proceeding that another man committed sexual indiscretions upon her. Defendant further alleged that daughter also accused her now deceased stepfather of molesting her.

Defendant sought to cross-examine daughter about these purported allegations in an attempt to impeach her credibility.

Defendant's goal was to establish that daughter had made allegations of sexual abuse on prior occasions which were later found to be untrue. The trial court ruled that such cross-examination and evidence was irrelevant, and if relevant, its probative value was outweighed by its prejudicial effect. When pressed by the trial court, defendant admitted that there was no finding concerning the truthfulness of the charges against the other man in the Iowa proceedings. There is also no evidence in the record to show that any investigation or judicial determination was made concerning the charges allegedly made against her stepfather, if indeed the charges were made in the first place.[1]

In reviewing the trial court's evidentiary ruling concerning this issue, the standard of review that is applied is whether the trial court abused its discretion. *State v. Pedde*, 334 N.W.2d 41, 43 (S.D.1983); *State v. Houghton*, 272 N.W.2d 788, 790 (S.D. 1978).

> In making such review we are bound by the rule that the question is "not whether the judges of this court would have made an original like ruling, but rather whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion."

*State v. Rose*, 324 N.W.2d 894, 895–96 (S.D. 1982), (*quoting F.M. Slagle & Co. v. Bushnell*, 70 S.D. 250, 254, 16 N.W.2d 914, 916 (1944)). One must also keep in mind that "[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624, 629 (1931). *See also State v. Wounded Head*, 305 N.W.2d 677, 680 (S.D.1981).

In this case, defendant sought to attack daughter's credibility by asking about her truthfulness regarding prior alleged

---

**1.** It is difficult to adequately address this issue based upon the lack of information contained in the record. Defendant failed to make any offer of proof as to what evidence he sought to bring before the jury. The Iowa file was not introduced into evidence. In future cases, defense counsel should see that the record contains the evidence sought to be used to allow this court to conduct a thorough review of the issue.

charges of sexual molestation committed against her. When dealing with this type of cross-examination, one can inquire only "into relevant specific instances of conduct." SDCL 19–12–6. Thus, to be admissible, the evidence must be found to be relevant.

■ This court has never addressed this issue. The Supreme Court of North Dakota recently considered a similar matter in *State v. Kringstad*, 353 N.W.2d 302 (N.D. 1984). In *Kringstad*, the defendant, who was charged with rape, sought to cross-examine the complaining witness about a previous rape accusation. The North Dakota court first noted that "prior truthful charges of rape are not relevant ..." in rape cases. 353 N.W.2d at 311. "Thus, to be relevant in this case, the prior charge of rape must necessarily have been false." *Id.*

Applying the *Kringstad* ruling to the case at bar would require that daughter's sexual assault accusations be proven false before they become relevant. The *Kringstad* court defined the quantum of proof required to be that the falsity of a previous charge must be proven to be "demonstrably false." *Id.* (*Citing Little v. State*, 413 N.E.2d 639, 643 (Ind.App.1980)). We concur and hold that to be admissible for cross-examination purposes, the prior sex crime accusation must be demonstrably false before it can be considered relevant.

■ When using the "demonstrably false" standard, mere denial of the accusation is not enough, *Kringstad, supra*. It is not enough if the complaints were arguably false, *State v. Demos*, 94 Wash.2d 733, 736, 619 P.2d 968, 970 (1980). In some instances even a not guilty verdict on an asserted false charge may not be enough to make the prior accusations relevant, *State v. Schwartzmiller*, 107 Idaho 89, 92, 685 P.2d 830, 833 (1984).

■ The "demonstrably false" standard appropriately keeps the focus on the de-

fendant instead of turning the trial into one of the victim. *State v. Anderson*, —— Mont. ——, ——, 686 P.2d 193, 200 (1984). Other jurisdictions have also adopted this standard. *Hughes v. Raines*, 641 F.2d 790 (9th Cir.1981); *State v. Johnson*, 102 N.M. 110, 692 P.2d 35 (N.M.Ct.App.1984). *Cf. People v. Hurlburt*, 166 Cal.App.2d 334, 333 P.2d 82 (Cal.Dist.Ct.App.1958).

From the scant record, it is clear that defendant has failed to show that daughter ever made sexual abuse charges against either her stepfather or the Iowa man. There was also no showing that either charge, if made, was demonstrably false. Therefore, the trial court did not abuse its discretion when it refused to allow cross-examination of daughter concerning these alleged matters.

### ISSUE TWO

The second issue is whether the trial court abused its discretion by admitting evidence of other instances of sexual contact between defendant and daughter.

Prior to trial, the state filed a motion seeking to have evidence of other bad acts of defendant with daughter admitted into evidence pursuant to SDCL 19–12–5.[2] The state sought to introduce evidence that defendant had sexual contact with daughter both times they lived in Michigan. The trial court properly entered its findings of fact and conclusions of law and concluded that on a limited basis, evidence of other bad acts should be admitted.

In *State v. Means*, 363 N.W.2d 565, 568 (S.D.1985), this court stated:

In ruling on the admissibility of evidence of other crimes, wrongs, or acts, a trial court must first determine relevancy. [*State v.*] *Wedemann*, [339 N.W.2d 112, 115 (S.D.1983)]. "Any fact that tends to connect an accused with the commission of a crime is relevant and has probative value." *State v. Dace*, 333 N.W.2d 812, 816 (S.D.1983), *quoting*

2. The admission of other "bad acts" under SDCL 19–12–5 is well accepted in this and other jurisdictions in cases of sex crimes. This court expresses no opinion in this decision on the effect of § 19–12–5 to allow evidence of other "bad acts" in other types of criminal prosecutions.

*from State v. Johnson,* 316 N.W.2d 652 (S.D.1982). "Such other incidents are material if they show a plan or system of criminal action and acts constituting continuous offenses." *Id.* If the trial court determines the evidence is relevant, it must then decide whether the probative value of the evidence substantially outweighs its prejudicial effect. If, although relevant, the court decides its admission will produce unfair prejudice to the defendant, it cannot be admitted. *Dace, supra; Wedemann, supra; State v. Iron Shell,* 336 N.W.2d 372 (S.D.1983); *State v. Brown,* 285 N.W.2d 843 (S.D. 1979); *State v. Houghton,* 272 N.W.2d 788 (S.D.1978); SDCL 19–12–3. This delicate balancing process is within the trial court's sound discretion. *Dace, supra; State v. Holland,* 346 N.W.2d 302 (S.D. 1984); *Wedemann, supra; Houghton, supra.* The question on review is whether the trial court abused that discretion. *Wedemann, supra; Houghton, supra; Brown, supra.*

■ Defendant urges us to adopt an additional requirement in sex offense cases. He contends that the complaining witness should not be allowed to testify about a defendant's other "bad acts" unless there is corroboration of these acts from another source. Defendant cites several California cases to support this proposition. *See People v. Stanley,* 67 Cal.2d 812, 63 Cal.Rptr. 825, 433 P.2d 913, (1967).

We decline to adopt the *Stanley* rule in this jurisdiction. "In South Dakota it is not essential to a sexual offense conviction that the testimony of the victim be corrobo-

rated by other evidence." *State v. Grey Owl,* 316 N.W.2d 801, 804 (S.D.1982). It would make no sense to require corroboration of sexual "bad act" testimony, while allowing a complaining witness's noncorroborated testimony to be sufficient for a jury to convict a defendant of a sex crime.

■ The admission of other "bad acts" testimony is governed by SDCL 19–12–5.[3] If relevant, "[e]vidence of other wrongs or acts is admissible for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, and a course of continuous criminal action." *State v. Roden,* 380 N.W.2d 669, 671 (S.D.1986). In the case at bar the trial court admitted the evidence of other "bad acts" because it felt that such evidence had "a direct bearing on proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *Roden, supra,* the "bad acts" testimony "showed an implied intent or objective by [the defendant] to satisfy his sexual urges with children[.]" 380 N.W.2d at 670. In *State v. Thomas,* 381 N.W.2d 232, 237 (S.D.1986), testimony of a noncomplaining witness was allowed to establish a "modus operandi" or plan. In this case, it is clear that the bad acts were properly admitted to prove motive, opportunity, intent,[4] preparation,[5] plan, knowledge, absence of mistake or accident and obviously "a course of continuous criminal action." *Roden, supra,* at 671.

After a trial court determines that the bad acts testimony is relevant, the court must weigh the probative value of such evidence against its prejudicial effect to the

---

**3.** SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**4.** Defendant sought to show that any contact he could have had with daughter was accidental and not intentional such as the "accidental" touching of the breasts and vagina during wres-

tling episodes. Daughter's testimony that defendant molested her almost nightly in Michigan and talked sensually to her while it was going on clearly negates any claim of accident or lack of intent or knowledge.

**5.** When mother brought daughter back to South Dakota after the first period daughter lived with defendant in Michigan defendant followed her. Later, after mother broke up his sleeping arrangement with daughter defendant financed daughter's plane ticket back to Michigan where the second period commenced when he committed "bad acts" upon her.

defendant. In *State v. Rose*, 324 N.W.2d 894, 896 (S.D.1982), we stated:

> While the evidence of other crimes was undoubtedly prejudicial to appellant, the operative words of SDCL 19–12–3 are "substantially outweighed" and "unfair." The trial court was careful to insure that the other crimes evidence was substantial and fixed in time with reasonable certainty to allow appellant a fair opportunity to refute.

The record shows that the trial court complied with these requirements. The trial court ascertained that the time of the Michigan "bad acts" was well established and nearly continuous before and within months after the time defendant lived with daughter in Mitchell. The trial court refused to allow portions of a pretrial statement where defendant admitted he had taken nude pictures of daughter since the picture-taking incidents resulted in no touching, a required element for conviction under sexual contact with a minor child, SDCL 22–22–7. Those portions of the Michigan evidence that the court did allow into evidence, were, in the opinion of the court, established by "clear and convincing evidence." The trial court also correctly instructed the jury on the limited purposes for which such evidence could be considered. We presume that the jury followed this limiting instruction. *State v. Reddington*, 80 S.D. 390, 396, 125 N.W.2d 58, 62 (1964).

Thus, we find the trial court did not abuse its discretion in admitting the other "bad acts" evidence.

The judgment of conviction is affirmed.

MORGAN, FOSHEIM and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

GILBERTSON, Circuit Judge, for WUEST, C.J., disqualified.

HENDERSON, Justice (concurring in result).

I agree with the entirety of this opinion. However, I would strike the reference, as authority, to *State v. Schwartzmiller*, 107 Idaho 89, 92, 685 P.2d 830, 833 (1984), as (a) it is obiter dicta and inapposite to this decision, and (b) the holding therein is too extreme. It is not requisite to this holding. Further, I have dissented in some South Dakota cases cited as authority and do not desire to retroactively marry myself to their liberal "bad acts" holdings. This Court, I believe, was judicially erroneous in some of its "bad acts" decisions. In this case, I am firmly convinced that the trial court did not abuse its discretion by admitting evidence of other sexual contact between the defendant and the victim in Michigan. In my opinion, evidence of a pattern of conduct establishing (a) a regular and frequent sleeping arrangement and (b) resultant sexual contact perpetrated by the defendant demonstrates a common scheme, intent, and objective by the defendant to sexually contact his daughter. These "bad acts" were not remote in time. *Roden*, cited in the majority opinion, is recent and controlling authority in this Court to sustain the trial court's ruling on admission of this evidence. There was no abuse of discretion in its evidentiary decision; thus, I join the majority opinion.