SEVERSON, Justice.
[¶ 1.] Joshua John Armstrong was convicted of Sexual Contact with a Person Under Sixteen in violation of SDCL 22-22-7. The trial court admitted evidence of Armstrong’s 1999 conviction of Rape in the Third Degree as well as statements he made in group counseling sessions as part of the mandatory prison sex offender counseling program. The trial court also limited Armstrong’s cross-examination of the victim regarding allegations of sexual abuse she made against another individual. Armstrong appeals. We affirm the trial court on all issues.
BACKGROUND
[¶2.] T.A. (Mother) is the mother of R.L., the thirteen-year-old victim in this case. Mother and Armstrong divorced in 2001, in part because Armstrong was convicted of Rape in the Third Degree on February 26, 1999, and was sentenced to a ten-year term of imprisonment in the South Dakota State Penitentiary. Armstrong was released on February 18, 2009. Upon release, Armstrong planned to return to the Flandreau, South Dakota, community to live with his mother, Paula Man-warren. But on February 18 and 19, 2009, after having dinner with his family at Man-warren’s house, Armstrong spent the night at Mother’s home.
[¶ 3.] Upon arriving home from dinner on February 19, 2009, Mother told her four daughters to get ready for bed. She *9 asked R.L. to go upstairs to get pajamas for her three younger sisters. Armstrong followed R.L. upstairs. R.L. testified that while she was in Mother’s room looking for the pajamas, Armstrong came into the room to talk to her. Armstrong began speaking to R.L. about his Wiccan religion. Armstrong described a dream in which he saw R.L. lying naked on a table surrounded by candles. As Armstrong described his dream, R.L. received a phone call from a friend. R.L. sat on Mother’s bed while talking to her friend. Armstrong sat down beside R.L. and began touching her breasts. When asked at trial whether Armstrong touched her “more than once in more than one place,” R.L. responded, “Yes.” R.L. stated that Armstrong also touched her on her butt and in between her legs. R.L. moved away from Armstrong, but did not tell him to stop.
[If 4.] When R.L. finished her phone call, Armstrong began talking to R.L. about dragons. Armstrong told her that the dragons “wanted [her] for something” because she had a “special quality or a special thing that his dragons wanted from her.” Armstrong threatened her, saying that the dragons could “do bad things, that ... [they could] hurt her sisters.” Armstrong said that R.L. could stop anything from happening to her sisters if she agreed to “take off [her] clothes.” When R.L. refused, Armstrong told her that it was “right for parents to do bad things to their children” and promised R.L. that he “would make [her] bedtime later if [she] would let him do bad things to [her].” R.L. told Armstrong “it wasn’t right” and left the room. Armstrong went downstairs and watched television with Mother.
[¶ 5.] Manwarren picked up R.L. and her sister from school the following day. When they arrived at R.L.’s home, R.L. told Manwarren that “she didn’t want to go home, that she wanted to stay with [her].” Manwarren asked R.L. why she did not want to go home. R.L. told Man-warren that Armstrong was inside babysitting her younger sisters and that he “touched her” the night before. Manwar-ren took R.L. to see Mother at her workplace. After speaking with Mother, Man-warren asked R.L. whether she wanted to confront Armstrong or whether she wanted to talk to the police. R.L. said that “she wanted to talk to the cops.”
[¶ 6.] Special Agent James Severson of the South Dakota Division of Criminal Investigation interrogated Armstrong after he was arrested. Armstrong told Agent Severson that he followed R.L. upstairs so that he could talk to her. Armstrong told Agent Severson that he and R.L. began talking about “dragons and different things that are involved in the Wiccan religion.” R.L. was “concerned because she wasn’t having ... visions” anymore. Armstrong explained that “she didn’t have the visions because she is a Christian.” Armstrong said that “[R.L.] was scared and was crying and wanted him to hold her and to hug her.” “She hugged him and laid her head on his shoulder.” “He was patting her head and she was kind of sitting on his lap next to him on the end of the bed.” Armstrong said that he “put his hand on the side of her leg.” When Agent Severson confronted Armstrong with R.L.’s allegations, Armstrong denied inappropriately touching her.
[¶ 7.] On March 6, 2009, a Moody County grand jury indicted Armstrong on one count of Sexual Contact with a Person Under Sixteen in violation of SDCL 22-22-7. The State filed a Part II Information on March 18, 2009, alleging that Armstrong was a habitual offender under SDCL 22-7-7 given his prior felony conviction of Rape in the Third Degree. The case proceeded to trial on July 9, 2009, and the jury found Armstrong guilty. Arm *10 strong appeared before the trial court on September 2, 2009, for sentencing. The trial court, relying on the findings of the pre-sentence investigation, sentenced Armstrong to a twenty-five-year term of imprisonment in the penitentiary. Armstrong appeals.
ANALYSIS AND DECISION
[¶ 8.] 1. Whether the trial court abused its discretion by admitting evidence of Armstrong’s 1999 conviction of Rape in the Third Degree.
[¶ 9.] On June 23, 2009, the State filed a Notice of Intent to Offer Other Acts Evidence. The State sought to introduce evidence of Armstrong’s 1999 conviction of Rape in the Third Degree. Armstrong was twenty-two years-old at the time of the conduct giving rise to his prior rape conviction. On August 26, 1997, Armstrong attended a party at a home in Sioux Falls. At some point during the night, he noticed a fifteen-year-old female lying naked in a bedroom. Armstrong entered the bedroom and asked the female if she wanted to have sex. The victim, who was extremely intoxicated, said, “Yes.” Armstrong began kissing her neck and breasts and had sexual intercourse with her. He later pleaded guilty to Rape in the Third Degree in violation of SDCL 22-22-1. The trial court admitted the evidence of Armstrong’s prior rape conviction to show that he had the specific intent to arouse or produce sexual gratification when he touched R.L. and to rebut his defense of mistake or accident.
[¶ 10.] “[I]t is a settled and fundamental principle that persons charged with crimes must be tried for what they allegedly did, not for who they are.” State v. Moeller, 1996 S.D. 60, ¶ 6, 548 N.W.2d 465, 468 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir.1985)).
Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing.
Id. (quoting Hodges, 770 F.2d at 1479). “No matter how vile or despicable a person may appear to be, he or she is entitled to a fair trial.” Id. “[Individuals may only be convicted for the crimes with which they are charged; they may not be subject to criminal conviction merely because they have a detestable or abhorrent background.” Id. (citing Hodges, 770 F.2d at 1479).
[¶ 11.] The admission of prior acts evidence is governed by SDCL 19-12-5 (Rule 404(b)), which provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
“Prior ... acts evidence is not admissible to show that, merely because a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged.” State v. Steichen, 1998 S.D. 126, ¶ 17, 588 N.W.2d 870, 874 (quoting Moeller, 1996 S.D. 60, ¶ 12, 548 N.W.2d at 471). But prior acts evidence may be admitted for other purposes, including, but not limited to, those listed in *11 SDCL 19-12-5 (Rule 404(b)).[1] Id. (citing State v. Champagne, 422 N.W.2d 840, 842 (S.D.1988)). “It is the proponent of the prior act[s] evidence who must persuade the trial court that the evidence has some permissible purpose.” State v. Lassiter, 2005 S.D. 8, ¶ 15, 692 N.W.2d 171, 176 (citing State v. Wright, 1999 S.D. 50, ¶ 14, 598 N.W.2d 792, 798 (citing SDCL 19-12-1 (Rule 401))).
[¶ 12.] A trial court must engage in a multi-prong analysis before admitting prior acts evidence. Id. (citing State v. Ondricek, 535 N.W.2d 872, 873 (S.D.1995)). A trial court must consider (1) whether the intended purpose of the prior acts evidence is relevant to some material issue in the case other than character (factual relevance) and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect (legal relevance). Id. (citing Ondricek, 535 N.W.2d at 873). See United States v. Betterton, 417 F.3d 826, 831 (8th Cir.2005) (“For evidence of past crimes to be admissible under Rule 404(b), the evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the charged crime; (3) supported by sufficient evidence; and, (4) such that its potential prejudice does not substantially outweigh its probative value.”) (citing United States v. Williams, 308 F.3d 833, 837 (8th Cir.2002)). A trial court’s admission of prior acts evidence is reviewed under the abuse of discretion standard. State v. Jones, 2002 S.D. 153, ¶ 6, 654 N.W.2d 817, 818-19 (quoting State v. Chamley, 1997 S.D. 107, ¶ 7, 568 N.W.2d 607, 611).
[¶ 13.] Prior acts evidence first must have a permissible purpose and be relevant to some point genuinely in issue in the case. Lassiter, 2005 S.D. 8, ¶ 15, 692 N.W.2d at 176 (citing Ondricek, 535 N.W.2d at 873). Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” SDCL 19-12-1 (Rule 401). “[M]uch more is demanded than the mere repeated commission of crimes of the same class[.]” Lassiter, 2005 S.D. 8, ¶ 16, 692 N.W.2d at 176 (quoting McCormick on Evidence § 190, at 449 (Edward W. Cleary ed., 2d ed.1972)). Pri- or acts evidence “offered for the sole purpose of establishing a propensity to commit a crime is irrelevant and therefore inadmissible.” Id. ¶ 13, 692 N.W.2d at 175 (citing Wright, 1999 S.D. 50, ¶ 14, 593 N.W.2d at 799).
[¶ 14.] But prior acts evidence may be admissible to prove “absence of mistake or accident.” SDCL 19-12-5 (Rule 404(b)). Armstrong initially claimed mistake or accident when being interviewed by the police and then later raised that defense at trial. His counsel argued during opening statement that “nothing inappropriate happened.” He conceded that Armstrong touched R.L., but maintained that it was done innocently in an attempt to comfort her. He contended that R.L. misunderstood an attempt at affection given her prior experience with male members of her household. See infra ¶ 24. In his closing argument, Armstrong’s counsel argued that R.L. did not “know how to handle a loving hug.” Armstrong made mistake or accident an issue at trial, and the evidence of his prior rape conviction was relevant to rebut his defense. Because it was offered for the permissible purpose of proving the absence of mistake or accident, the evidence of Armstrong’s prior rape *12 conviction was factually relevant. See Lassiter, 2005 S.D. 8, ¶ 13, 692 N.W.2d at 175 (citing Wright, 1999 S.D. 50, ¶ 14, 593 N.W.2d at 799).
[¶ 15.] We turn then to the question whether the prior acts evidence was legally relevant. See id. ¶ 15, 692 N.W.2d at 176 (citing Ondricek, 535 N.W.2d at 873). Even if relevant to a material issue of fact, prior acts “evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]” SDCL 19-12-3 (Rule 403). “Prejudice does not mean infliction of damage to the opponent’s case that results from the legitimate probative force [of] the evidence; rather, it refers to the capacity of the evidence to persuade the jury by illegitimate means.” State v. Smith, 1999 S.D. 83, ¶ 19, 599 N.W.2d 344, 349-50 (citing State v. Iron Shell, 336 N.W.2d 372, 375 (S.D.1983) (quoting 22 C. Wright & K. Graham, Federal Practice and Procedure § 5215, at 274-75 (1978))). “[I]n order to exclude the evidence, the danger of unfair prejudice must not only outweigh the probative value, ... it must outweigh it substantially.” Id., 599 N.W.2d at 350 (citing State v. Rhines, 1996 S.D. 55, ¶ 94, 548 N.W.2d 415, 440; State v. White, 538 N.W.2d 237, 243 (S.D.1995)).
[¶ 16.] The remoteness and similarity of the prior act to the charged offense are significant factors in balancing probative value and prejudicial effect. Fisher, 2010 S.D. 44, ¶ 28, 783 N.W.2d at 673. Remoteness is not subject to a rigid rule, but will depend on the facts of the case. Id. (citing Wright, 1999 S.D. 50, ¶ 24, 593 N.W.2d at 802). Indeed, “remoteness and similarity must be considered together because the two concepts are so closely related[.]” Id. (quoting Fisher v. State, 641 N.E.2d 105, 109 (Ind.Ct.App.1994)). See Betterton, 417 F.3d at 831 (“[T]o be admissible under Rule 404(b), the evidence must be ... similar in kind and not overly remote in time to the charged crime[.]”) (citing Williams, 308 F.3d at 837). “[T]he remoteness of a prior [act] takes on increased significance as the similarity between the prior [act] and the charged offense increases.” Fisher, 2010 S.D. 44, ¶ 28, 783 N.W.2d at 673 (quoting Fisher, 641 N.E.2d at 109). “Accordingly, a prior ... act, despite its remoteness, may still be relevant if it is strikingly similar to the charged offense. Conversely, less similarity may be required where the prior act is closer in time to the charged [offense].” Id. (quoting Fisher, 641 N.E.2d at 109).
[¶ 17.] Here, the trial court considered the remoteness and similarity of the prior act to the charged offense. The trial court found that Armstrong’s prior rape conviction was “similar in character and reasonably related to the offending conduct giving rise to the pending charges.” Furthermore, because Armstrong was incarcerated and released just forty-eight hours before the charged offense occurred, the trial court noted that “the date of the prior offense and conviction [was] not so remote as to render [the] evidence irrelevant.” The trial court thus found that the “probative nature and relevance of [evidence of Armstrong’s prior rape conviction was] not substantially outweighed by its prejudicial impact on the defense.” For these reasons, the trial court concluded that the evidence of Armstrong’s prior rape conviction was legally relevant.
[¶ 18.] We must also consider the remoteness and similarity of the prior act to the charged offense. We agree that, given Armstrong’s incarceration and release just two days before the charged offense, his prior rape conviction was not remote. Thus, under Fisher, less similarity between the prior act and the charged offense was required. See id. ¶29, 783 *13 N.W.2d at 673-74 (holding that fourteen-year-old sexual-contact conviction was not strikingly similar to the charged offense). Because Armstrong’s victims were similar ages when the offenses occurred, the requisite degree of similarity existed in this case. The evidence of Armstrong’s 1999 conviction of Rape in the Third Degree was therefore factually and legally relevant, and the trial court did not abuse its discretion by admitting it.
[¶ 19.] 2. Whether the trial court abused its discretion by admitting evidence of statements Armstrong made in group counseling sessions as part of the mandatory prison sex offender counseling program.
[¶ 20.] Armstrong argues that the trial court abused its discretion by admitting evidence of statements he made in group counseling sessions as part of the mandatory prison sex offender counseling program. At trial, the State presented the testimony of Sheila Kieso, a behavioral specialist employed by the South Dakota Department of Corrections, who counsels sex offenders incarcerated in the penitentiary. Kieso counseled Armstrong regarding sexual preferences and boundaries, relapse prevention, the offending cycle, and the impact of his crime on his victim. Kie-so testified that Armstrong stated that “it was okay to have sex with children as long as they had their period, then they were able to have sex.” Kieso also testified that when she asked Armstrong how “he perceived the law that he was convicted of’ violating, “he said that it was man’s law not God’s law.”
[¶ 21.] We first consider whether Armstrong’s statements to Kieso constitute inadmissible hearsay. “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” SDCL 19-16-1(3) (Rule 801(c)). Hearsay is generally inadmissible. SDCL 19-16-4 (Rule 802). But “[a] statement is not hearsay if it is offered against a party and is ... his own statement, in either his individual or a representative capaeity[J” SDCL 19-16-3(1) (Rule 801(d)(2)(A)). The State offered Armstrong’s statements to Kieso against him. His statements are therefore admissions by a party opponent under SDCL 19-16-3(1) (Rule 801(d)(2)(A)) and are not inadmissible hearsay.
[¶ 22.] Armstrong argues that the statements he made to Kieso during group counseling sessions were not relevant. Although prior acts evidence offered for the sole purpose of establishing propensity is irrelevant, it may be relevant to prove “absence of mistake or accident.” SDCL 19-12-5 (Rule 404(b)). Armstrong raised the defense of mistake or accident at trial, and Armstrong’s statements to Kieso were relevant to rebut that defense. Armstrong’s statements to Kieso were also relatively recent and bore sufficient similarity to the charged offense so that their probative value is not substantially outweighed by their prejudicial effect. See SDCL 19-12-3 (Rule 403). The trial court therefore did not abuse its discretion by admitting evidence of statements Armstrong made in group counseling sessions as part of the mandatory prison sex offender counseling program. See State v. Anderson, 2000 S.D. 45, 608 N.W.2d 644 (holding that the trial court did not abuse its discretion by admitting evidence of prior statements Anderson made concerning his preparations for kidnapping women under SDCL 19-12-5 (Rule 404(b))).
[¶ 23.] 3. Whether the trial court abused its discretion by limiting Armstrong’s cross-examination of R.L. regarding allegations of sexual abuse she made against another individual.
*14 [¶ 24.] Before this case, R.L. twice made allegations of sexual abuse against male members of her household. In 1999, when R.L. was four or five years-old, she alleged that her uncle, Terrence Peltier, touched her inappropriately. Because Peltier was found incompetent to stand trial, R.L.’s allegations did not result in a conviction. In 2008, R.L. alleged that Mother’s boyfriend, Obang Ogeli, touched her inappropriately. R.L.’s allegations against Ogeli were similar to her allegations against Armstrong. Ogeli was ultimately convicted and is currently serving a prison sentence. The trial court permitted inquiry into R.L.’s allegations of sexual abuse against Ogeli, but not against Pel-tier.
[¶ 25.] Armstrong argues that the trial court abused its discretion by limiting his cross-examination of R.L. regarding the allegations of sexual abuse she made against Peltier. At trial, Armstrong’s counsel conceded that Armstrong touched R.L., but maintained that the contact was not inappropriate. Because R.L. was the only witness to testify to the nature of the contact, Armstrong contends that R.L.’s credibility and experience were relevant. Armstrong argues that he should have been allowed to cross-examine R.L. regarding her prior allegations of sexual abuse so that the jury could assess whether he had the specific intent of arousal or sexual gratification when he touched her.
[¶ 26.] SDCL 23A-22-15 precludes evidence of specific instances of a victim’s prior sexual conduct except when “the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of the evidence.” “The rule pertains to ‘prior sexual conduct,’ which presupposes that it occurred.” State v. Juarez-Ralios, 2010 S.D. 43, ¶ 59, 783 N.W.2d 647, 663. In State v. Sieler, we held that to become relevant the prior charge of rape must be shown to be “demonstrably false” as “prior truthful charges of rape are not relevant!.]” 397 N.W.2d 89, 92 (S.D.1986) (quoting State v. Kringstad, 353 N.W.2d 302, 311 (N.D.1984)). See Juarez-Ralios, 2010 S.D. 43, ¶ 59, 783 N.W.2d at 663; State v. Guthmiller, 2003 S.D. 83, ¶¶ 27-28, 667 N.W.2d 295, 305; State v. Dillon, 2001 S.D. 97, ¶¶ 23-26, 632 N.W.2d 37, 47-48. To do otherwise would turn “the trial into one of the victim.” Sieler, 397 N.W.2d at 92 (citations omitted).
[¶ 27.] Only the trial court’s exclusion of R.L.’s allegations against Peltier is at issue. “A trial court’s rulings on limiting cross-examination will be reversed on appeal only when there is a clear abuse of discretion as well as a showing of prejudice to the defendant.” State v. Carter, 2009 S.D. 65, ¶ 31, 771 N.W.2d 329, 338 (citing State v. Koepsell, 508 N.W.2d 591, 595 (S.D.1993)). Peltier was found incompetent to stand trial, and the trial for sexual contact with R.L. did not proceed. Thus, the credibility of R.L.’s allegations was never raised. Even if Peltier had been acquitted, “[i]n some instances even a not guilty verdict on an asserted false charge may not be enough to make the prior accusations relevant!.]” Sieler, 397 N.W.2d at 92 (citation omitted). Because Armstrong has not demonstrated the falsity of R.L.’s allegations against Peltier, they are not relevant in this case. The trial court did not abuse its discretion by limiting Armstrong’s cross-examination of R.L. regarding the allegations of sexual abuse she made against Peltier.
[¶ 28.] Affirmed.
[¶ 29.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.
[¶ 30.] ZINTER, Justice, concurs specially.
[¶ 31.] MEIERHENRY, Justice, concurs in result.

. As evidenced by the language of SDCL 19-12-5 (Rule 404(b)), the list of the inclusions is not exhaustive. State v. Fisher, 2010 S.D. 44, ¶ 23, 783 N.W.2d 664, 672.