#28181-a-SLZ
**2018 S.D. 2**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

TRAVIS ROBERT PHILLIPS,                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHERYLE W. GERING
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

QUINCY R. KJERSTAD
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                         and appellee.


WILLIAM D. SIMS of
Zimmer, Duncan & Cole, LLP
Sioux Falls, South Dakota                Attorneys for defendant
                                         and appellant.


\* \* \* \*

CONSIDERED ON BRIEFS ON
NOVEMBER 6, 2017
OPINION FILED **01/03/18**

#28181

ZINTER, Justice

[¶1.]         Travis Phillips was convicted of aggravated assault (domestic) and simple assault (domestic).  He appeals the circuit court's admission of evidence of alleged instances of prior domestic abuse.  We affirm.

*Facts and Procedural History*

[¶2.]         Travis Phillips and Amanda Johnson were married in 2014.  Their marriage was often contentious.  Phillips suspected Johnson of having affairs, which led to many accusations and arguments.

[¶3.]         On June 24, 2016, Johnson called Phillips at work to inform him that a law enforcement officer came to their apartment to serve legal papers.  The paperwork related to stalking charges filed against Phillips by Tim DeWitt, a man with whom Johnson had previously had a sexual relationship.  Upset, Phillips left work and went to the apartment.

[¶4.]         Johnson testified that upon his arrival, Phillips consumed alcoholic beverages.  At about 6:00 or 7:00 p.m., when Johnson was making their son's bed, Phillips entered the doorway to the room and began yelling at her about DeWitt and her relationship with him.  Johnson tried to leave the room, but Phillips blocked the doorway.  He told her to sit on the bed, and he continued yelling at her for yet another hour, alleging the stalking charges were her fault because she had a relationship with DeWitt.  Johnson testified that when Phillips then approached and backed her into a wall, she kicked him in the groin.  Phillips became even angrier and knocked a box fan off a dresser.

-1-

[¶5.]        Johnson repeatedly asked Phillips to use the bathroom, and Phillips eventually relented.  Phillips followed Johnson into the bathroom and continued yelling at her.  She alleged that while in the bathroom, Phillips threatened her, indicating that he was going to report her for marijuana use[1] and that she would never see her children again.

[¶6.]        When Johnson attempted to leave the bathroom, Phillips put his arm around her waist and threw her back into the bathroom, causing her arm to hit and bend a doorknob.  When Johnson began screaming for someone to call the police, Phillips covered her mouth and nose with his hand, making it difficult for Johnson to breathe.  Johnson then started sobbing uncontrollably, and Phillips sat down on the toilet seat and told her to be quiet.  Johnson testified that Phillips then put his hands around her neck, preventing her from breathing: he told her he knew a wrestling move that would not leave any marks.  Phillips released her once he realized she could not breathe.

[¶7.]        Johnson exited the bathroom, and Phillips followed her into the kitchen.  He told her that she had until 11:00 p.m. to figure out "where [their] relationship was going" or he was going to leave with their son.  At 11:00, Phillips took their son out of Johnson's arms and left.  According to Johnson, when she tried to follow, Phillips threatened to kick her back into the house "so hard that [she] would be sh***ing in a bag for the rest of [her] life."  Johnson then waited and followed from a distance.  She noticed a neighbor was outside and asked if she could

---

1.      Johnson, who was sixteen weeks pregnant at the time, testified that she occasionally used marijuana to help with morning sickness.

use the neighbor's phone to call the police because Phillips was kidnapping her son. Phillips, who had taken Johnson's phone from her earlier that night, then threw her phone into the neighbor's yard. Johnson retrieved the phone and called law enforcement.

[¶8.] The police arrived and interviewed both Johnson and Phillips. Johnson told the officers that Phillips had thrown her into the bathroom and choked her. The officers noted Johnson had a bruise on her arm and marks on her chest and neck. When the officers asked Phillips what happened and what caused the marks, Phillips claimed that Johnson had an asthma attack and was hyperventilating. He denied that he would ever hit or harm his pregnant wife.

[¶9.] Phillips was arrested and charged with one count of aggravated assault (domestic) and three counts of simple assault (domestic). Prior to trial, the State gave notice of intent to introduce four prior incidents. The State alleged that on prior occasions: (1) Phillips "smacked" Johnson with an open hand after Phillips had accused Johnson of cheating and demanded to know who it was; (2) Phillips yelled or screamed at Johnson while driving, causing Johnson to "shut down"; (3) Phillips started arguments when Johnson was talking to a person either "too much" or about "inappropriate things"; and (4) while living in Idaho, an intoxicated Phillips threatened Johnson (who was pregnant with their son) that if she ever did anything to take their son away from him, Phillips would cause her to go missing. The State argued the prior acts were relevant to show the nature of their domestic relationship and Phillips's motive and intent to control Johnson through threats and physical violence.

[¶10.] The circuit court ruled that the prior acts were relevant and admissible to show: Phillips's "motive or plan to control his wife through threats and/or acts of physical violence"; Phillips's "motive and intention to physically assault his wife when he believed she was cheating on him"; and Phillips's "plan or knowledge of the manner in which he could hide any violent actions taken toward his wife." The court also ruled that the probative value of the acts was not substantially outweighed by the risk of unfair prejudice.

[¶11.] At trial, Johnson testified to the alleged assaults and the prior acts. The State also presented expert testimony from Krista Heeren-Graber, a social worker. Heeren-Graber testified about the dynamics of abusive relationships, including victim minimization of what is going on in a relationship and an abuser's use of threats and violence to maintain power and control. Phillips did not testify.

[¶12.] A jury found Phillips guilty of aggravated assault and one count of simple assault. On appeal, Phillips challenges the circuit court's admission of the other acts evidence. He also claims his trial counsel was constitutionally ineffective.

*Decision*

[¶13.] Phillips first argues that the prior acts were inadmissible because they were introduced only to show that he had a propensity to be violent. *See* SDCL 19-19-404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). However, other acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." SDCL 19-19-404(b)(2).

A circuit court's determination to admit other acts evidence will be overturned only upon a showing that it was an abuse of discretion. *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 16, 835 N.W.2d 886, 892.

[¶14.]    "To determine the admissibility of other acts evidence, the court must determine: (1) whether the intended purpose is relevant to some material issue in the case, and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect." *State v. Huber*, 2010 S.D. 63, ¶ 56, 789 N.W.2d 283, 301. SDCL 19-19-404(b) is a rule of inclusion, not exclusion. *Id.* "[I]f the other act evidence is admissible for any purpose other than simply character, then its use is sustainable. All that is prohibited under § 404(b) is that similar act evidence not be admitted 'solely to prove character.'" *State v. Wright*, 1999 S.D. 50, ¶ 17, 593 N.W.2d 792, 800 (footnote and citation omitted) (quoting *Huddleston v. United States*, 485 U.S. 681, 687, 108 S. Ct. 1496, 1500, 99 L. Ed. 2d 771 (1988)). "It is the proponent of the prior acts evidence who must persuade the trial court that the evidence has some permissible purpose." *State v. Armstrong*, 2010 S.D. 94, ¶ 11, 793 N.W.2d 6, 11.

[¶15.]    Phillips contends that none of the circuit court's stated purposes were at issue in this case; and therefore, none of the prior acts were relevant. We disagree. The prior acts showed a controlling and hostile relationship that was fueled by Phillips's suspicion of Johnson's relationship with other men. That evidence was relevant because it revealed a motive for Phillips's assault of Johnson.

In essence, the evidence was used to provide context and show the nature of the parties' relationship.[2]

[¶16.] Prior instances of domestic abuse against the same victim are often relevant in the familial context because they show the nature of the relationship, which explains the interactions between the parties.

> Domestic abuse often has a history highly relevant to the truth-finding process. When an accused had a close relationship with the victim, prior aggression, threats or abusive treatment of the same victim by the same perpetrator are admissible when offered on relevant issues under Rule 404(b). The rationale for admissibility is that an accused's past conduct in a familial context tends to explain later interactions between the same persons.

*State v. Laible*, 1999 S.D. 58, ¶ 21, 594 N.W.2d 328, 335 (citations omitted). In *Laible*, we upheld the admission of prior instances of domestic abuse in a murder prosecution because the defendant's "persistent verbal abuse, though not always accompanied by violence or threats, was an expression of his attitude, inseparable from his intermittent aggression." *Id.* Therefore, "[h]is previous attacks and threats . . . were . . . admissible to show the nature of [the] relationship, his motive, and his state of mind." *Id.*; *accord Huber*, 2010 S.D. 63, ¶ 57, 789 N.W.2d at 301-02.

[¶17.] Courts in other jurisdictions also admit prior instances of domestic abuse against the same victim in assault prosecutions. They do so for reasons similar to those we expressed in *Laible* and *Huber*. *See, e.g., State v. Taylor*,

---

2. We also note that immediately after the assault, Phillips claimed that Johnson's injuries were caused by hyperventilation in an asthma attack. Phillips's contemporaneous claim was an assertion of "accident" within the meaning of SDCL 19-19-404(b)(2). Phillips's prior acts were also relevant to prove "lack of accident." *See id.*

689 N.W.2d 116, 128 (Iowa 2004) ("The defendant's prior acts of violence toward his wife, while certainly illustrative of a propensity to use violence, also reflect his emotional relationship with his wife, which as our discussion shows, is a circumstance relevant to his motive and intent on the day in question."); *People v. Dorm*, 903 N.E.2d 263, 265 (N.Y. 2009) ("Contrary to defendant's arguments, the evidence in this case was not propensity evidence, but was probative of his motive and intent to assault his victim; it provided necessary background information on the nature of the relationship and placed the charged conduct in context."); *State v. Sanders*, 716 A.2d 11, 13 (Vt. 1998) (stating that prior instances of domestic abuse are relevant "to portray the history surrounding the abusive relationship, providing the needed context for the behavior in issue" and that "[a]llegations of a single act of domestic violence, taken out of its situational context, are likely to seem 'incongruous and incredible' to a jury"); *Thomas v. State*, 131 P.3d 348, 358 (Wyo. 2006) (upholding admission of prior instances of domestic abuse demonstrating an "ongoing pattern" of behavior because it refuted the claim that the victim caused her own injuries); *see also* 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 4:19, Westlaw (database updated Dec. 2017) (stating uncharged acts of domestic violence may be admitted "on a noncharacter motive theory; the uncharged acts evidence hostility toward the victim, and in turn that hostility may be the motive for the charged act of domestic violence").

[¶18.]     Phillips, however, contends that the evidence was inadmissible under *State v. Lassiter*, 2005 S.D. 8, 692 N.W.2d 171.  In *Lassiter*, the defendant was accused of assaulting the boyfriend of Lassiter's former girlfriend.  The circuit court

admitted evidence of a prior assault against a different former girlfriend. A majority of this Court reversed, holding that the prior assault constituted inadmissible character evidence. *Id.* ¶ 27, 692 N.W.2d at 179-80. In *Lassiter*, however, "there was no relationship between the two offenses or the two victims." *Id.* ¶ 21, 692 N.W.2d at 178. The majority held that without some sort of relationship between the offenses and the victims, the evidence only showed that the defendant had the propensity to commit assaults. *Id.* ¶¶ 22-23, 692 N.W.2d at 178-79. But the majority did note that when there is a relationship that connects the victims and offenses, the uncharged acts may show the existence of a motive that "is in the nature of hostility, antipathy, hatred, or jealousy." *Id.* ¶ 22, 692 N.W.2d at 178. Here, the victim is the same person and the offenses are similar. Therefore, *Lassiter* supports rather than precludes the admission of the other acts evidence.

[¶19.] Phillips also contends that even if the prior acts were relevant, the probative value was substantially outweighed by the risk of undue prejudice. We disagree. As previously noted, the prior acts were highly probative of Phillips and Johnson's relationship. Relationships are complex, and without an understanding of the nature of the abusive relationship, a jury may be unable or unwilling to accept that a single instance of abuse occurred without context to explain an isolated incident. *See Sanders*, 716 A.2d at 13 ("Without knowing the history of the relationship between the defendant and the victim, jurors may not believe the victim was actually abused, since domestic violence is 'learned, controlling behavior

aimed at gaining another's compliance' through multiple incidents." (quoting *Anderson v. Hensrud*, 548 N.W.2d 410, 414 (N.D. 1996))).

[¶20.] Phillips finally contends the circuit court erred in failing to make a preliminary determination that the prior acts occurred and that Phillips was the actor. We have said that other acts evidence is "admissible only if the evidence is sufficient for the trial court to conclude that a jury could find by a preponderance that the other 'act[s] occurred and that the defendant was the actor.'" *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 28, 756 N.W.2d 363, 375 (quoting *Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d at 798). Therefore, as a prerequisite to admissibility, the State was required to identify sufficient evidence for the trial court to make a determination whether the prior acts occurred.

[¶21.] Here, the court did not make a preliminary determination but it appears that the prior acts were uncontested. Phillips neither challenged the sufficiency of the evidence of the prior acts nor requested a preliminary determination. Additionally, the court correctly instructed the jury that it could only consider the prior acts if it found by a preponderance of the evidence that Phillips committed them. Finally, Phillips has not explained how the failure to make a *preliminary* finding prejudiced him. That failure is dispositive here because "the protection against . . . unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from" the requirements of Rule 404(b) itself. *Huddleston*, 485 U.S. at 691-92, 108 S. Ct. at 1502. Accordingly, we find no reversible error in the lack of a preliminary finding.

[¶22.]       In his second issue, Phillips argues his trial counsel was ineffective. We only address a claim of ineffective assistance of counsel on direct appeal if it appears that counsel was "so ineffective and counsel's representation so casual as to represent a manifest usurpation of the defendant's constitutional rights." *State v. Kiir*, 2017 S.D. 47, ¶ 19, 900 N.W.2d 290, 297. In other words, it must be "obvious on the record that the defendant has been deprived of his constitutional rights to counsel and a fair trial." *State v. Chipps*, 2016 S.D. 8, ¶ 17, 874 N.W.2d 475, 482. That is because on direct appeal, trial counsel is not afforded the opportunity to explain and defend his or her actions. *Id.* Considering the nature of Phillips's ineffective-assistance claims, this is not a case in which a constitutional deprivation is obvious.

[¶23.]       Phillips's first claim is that his attorney was ineffective in failing to seek recusal of the trial judge. Phillips points out that the same judge had previously granted Johnson a protection order against him. However, we have repeatedly held that a judge's acquisition of knowledge from unrelated cases is not a ground for disqualification. *See State v. Hauge*, 2013 S.D. 26, ¶ 33, 829 N.W.2d 145, 153-54. Moreover, counsel may have believed it was better to continue with a judge who was already familiar with the case. In any event, Phillips cannot show prejudice. It was the jury—not the judge—that determined Phillips's guilt.

[¶24.]       Phillips also claims that counsel should have challenged the qualifications of the State's expert and retained an independent rebuttal expert. But there are often strategic reasons for not challenging such testimony. Counsel may have believed that the State's expert was properly qualified or that challenging

her credentials would pointlessly detract from the material issues and the credibility of the defense. Counsel may have also believed that cross-examination would have made retention of another expert unnecessary.

[¶25.] We cannot say on this record that counsel was so ineffective that it deprived Phillips of his constitutional rights to counsel and a fair trial. Phillips's claim of ineffective assistance of counsel is not appropriate for review on direct appeal.

[¶26.] Affirmed.

[¶27.] GILBERTSON, Chief Justice, and SEVERSON and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶28.] JENSEN, Justice, did not participate.